## Baker's Trust Estate.

Argued December 7, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

274

*Paul A. Mueller,* of *Windolph & Mueller,* for appellants.

*T. Roberts Appel,* with him *Louis S. May, M. M. Harnish* and *Harris C. Arnold,* for appellee.

OPINION BY MR. JUSTICE DREW, January 26, 1939:

P. W. Baker entered into an agreement on August 2, 1933, with and for the benefit of certain of his creditors, including appellee and appellants' assignor, Fulton National Bank, under which he confessed judgment to M. M. Harnish, as trustee, for $130,000. On December 10, 1936, while the trust agreement was still in force, Mr. Baker died insolvent. At the time of his death the Lancaster County National Bank, appellee, held obligations of decedent under the trust agreement, secured by shares of stock of the Bearings Company of America.

The first and partial account of the Executors of the Estate of P. W. Baker was called for audit in the Orphans' Court on May 17, 1937, at which time that court, by a preliminary adjudication, awarded to M. M. Harnish, as trustee under the above agreement, the net proceeds of the executors' sale of the real estate covered by the lien of the trustee's judgment of $130,000. On December 18, 1937, M. M. Harnish filed in the Court of Common Pleas his first and final account as trustee under the agreement, showing several prior partial distributions to creditors of funds received from various sources, and a balance for final distribution remaining in his hands. This amount was not sufficient to pay in full all creditors under the agreement. At the audit of this account, appellee presented its claim in its full

amount, maintaining that it was entitled to a dividend based on this amount without deduction of the value of the unconverted collateral held by it, but agreeing that, if the court overruled that contention, the collateral should be valued at $18,000 for the purpose of ascertaining its dividend. The court later permitted appellee to amend its claim by reducing the value of this collateral to $6,900. Appellants contended that appellee could claim only for the amount of the debt less the value of the securities which it held and that their value be set at $18,000. The court below upheld the contention of appellants that the collateral should be deducted, but placed the value at $6,900. Appellants further contended, as did appellee, that as to their respective claims on notes, on which P. W. Baker was one of the co-endorsers, held by them under the trust agreement, payments made to them by the co-endorsers, other than P. W. Baker or the trustee, should not be deducted in determining the value of these claims for dividend purposes. As to this contention, the court below ruled that the payments should be deducted. Upon the dismissal of exceptions filed to these rulings and the decree of distribution based thereon, appellants alone have appealed to this court.

The sole question is whether secured creditors under the trust agreement are entitled to dividends on the full amount of their claims or whether they may prove only for the amount of the original claim less the value of the collateral. We are not here concerned with what rule binds creditors claiming against the Estate of P. W. Baker directly, but rather with what rule shall govern the rights of the creditors who are parties to the trust agreement against the assets in the hands of the trustee. We must, therefore, be governed by the terms of the trust agreement in determining whether the court below should have applied to such creditors' claims the principle, known as the Equity Rule, permitting a secured creditor against an insolvent to claim for the full

amount of the obligation without deducting the value of the collateral held, as expressed in *Miller's Appeal*, 35 Pa. 481; or the principle, known as the Bankruptcy Rule, allowing a secured creditor against an insolvent to claim only for the amount of the debt less the value of the security, as enunciated in *United Security Trust Company Case*, 321 Pa. 276. The fact that a jurisdiction has definitely committed itself to one of these rules does not forbid the parties from inserting the other rule into the provisions of their contract: *Whitesel v. Harman*, 111 W. Va. 171.

A careful examination of the trust agreement has convinced us that the parties intended that the Equity Rule should apply. Paragraph 5 of that agreement provides: "Any of said creditors who hold collateral, when they are paid in full, shall assign such collateral or so much as may then remain or the amount realized from the sale of such collateral, after their indebtedness is paid in full, to said Trustee for the benefit of the said remaining creditors who accept this Agreement." This clearly shows that the secured creditor under the agreement is entitled to retain the security until he is paid in full and only at that time must he surrender the collateral. It follows that the unsecured creditors under the agreement are not entitled to any benefit from the collateral held by the secured creditor until the latter is paid in full. This paragraph is a clear statement of the Equity Rule.

Even if the contract were ambiguous, as the court below probably concluded, the subsequent conduct of the parties, which makes clear their interpretation, is admissible to clarify the language used. This is not contradicting or varying the terms of the agreement, or changing the liability imposed by it. Where some of the provisions of an agreement are susceptible of different meanings, the interpretation which the parties placed thereon and upon which they have uniformly acted for a considerable period of time will be regarded as the

proper one: *Philadelphia, Trustee, v. The Lehigh Valley Coal Co.,* 290 Pa. 87. In the instant case, without a single objection, computations and distributions of prior dividends were made under the trust agreement without deducting the value of the security in arriving at the amount of a secured creditor's dividend on his claim. It was not until this final distribution, more than four years after the execution of the agreement, and more than two years after the first distribution, that an attempt was made to invoke the Bankruptcy Rule.

Hence it is clear that the trust agreement adopted the Equity Rule, and the court below erred in requiring the appellee to deduct the value of the collateral from its claim. The same conclusion must be reached as to the payments from co-endorsers, other than P. W. Baker or the trustee, received by both appellants and appellee on the several notes held by them. Since the parties to the agreement intended that creditors holding stock as security should not deduct the value of that collateral in ascertaining their claims, the only reasonable conclusion is that they intended to make no distinction between such claims and other claims secured by obligations of endorsers. Hence, the claims of appellants and appellee upon the notes held by them should not have been reduced by the payments made by such co-endorsers.

Although appellee would not have had to deduct either the value of the collateral and its dividends or the payments by the co-endorsers in proving its claim, nevertheless, since, by filing no exception to the adjudication and by taking no appeal, it has consented to a reduction of its claim in the amount of $10,700, and we are not in position to change or modify the decree of the court below in this respect: *McNulty's Estate,* 230 Pa. 387.

The decree of distribution must be modified in so far as it requires appellants to deduct from their claim the payments received from the co-endorsers on the notes held by them.

The decree of the court below, as modified, is affirmed.