Mowry, Exr., Appellant, *v.* McWherter.

Argued October 6, 1953. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Thomas L. Wentling,* with him *Patterson, Crawford, Arensberg & Dunn,* for appellants.

*Louis E. Sensenich,* with him *Vincent R. Smith,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 9, 1953:

These appeals are from a decree in equity, in a proceeding in the nature of a declaratory judgment, wherein plaintiffs seek the interpretation of a written agreement and determination of the rights and obligations of the parties thereunder. The case was previously before this Court, reported in 365 Pa. 232, 74 A. 2d 154. The court below there sustained preliminary objections to plaintiffs' complaint and dismissed the bill. It regarded the language of the agreement clear and

precise, requiring no interpretation. This Court, however, was of opinion that the agreement is ambiguous and should be interpreted in the light of surrounding facts and circumstances. The decree was reversed, the defendant directed to answer, and upon issue joined and hearing had, the court below was directed to enter an appropriate decree.

Our directions have been disregarded. The defendant offered no evidence of surrounding facts and circumstances in aid of interpretation. The court below has again ruled that the contract is not ambiguous and that the parties are bound by the terms of the agreement as interpreted by that court. It was also decided that the parties had interpreted the agreement as thus construed and consequently were bound thereby. Judgment was again entered construing the agreement as that court interpreted it. Plaintiffs have appealed.

Since defendant submitted no evidence of surrounding facts and circumstances in aid of construction we must assume either that he chose not to do so, or that none existed. We are therefore required to interpret the agreement, in its entirety, *as written.*

Miles C. McWherter, appellee, and Victor R. Mowry, appellants' testator, were each an owner of one half the capital stock of a Pennsylvania business corporation, George Mowry & Co., Inc. They executed what has been termed a "home made" agreement dated April 21, 1943, for the sale to the survivor of the stock of the one first dying. The portion of the agreement requiring interpretation reads:

"2. Upon the demise of either of said parties the survivor of them shall immediately become the owner of all of the outstanding stock of said company with the option to pay for the same by either of the following methods: (a) By guaranteeing in writing to the

widow of such deceased party or his heirs an annuity of *at least* $150.00 per month for a period of 15 years beginning one month from the *date of the death* of such deceased party. (b) By paying to the widow of such deceased party or his personal representative 33-1/3% of the net worth of the real and personal property of the said company as of the *preceding December 31st.*

"3. If Option No. a is adopted by such survivor, he may at any time terminate the plan during said period of 15 years by paying to the widow or personal representative of such deceased party 40% of the *net worth* of the company as of *December 31st preceding the death* of said deceased party less the amount already paid to such deceased party's widow or heirs.

"4. The surviving party shall have a period of one year after the death of such deceased party to select the plan which he proposes to adopt, but in order that said widow may have an income during said period of one year said payments of $150.00 per month shall start one month after the date of the death of said deceased party and continue until the survivor has transmitted to the widow or personal representative of such deceased party in writing the information as to which plan he has elected to adopt, and if he adopts Option No. a he shall receive credit for the amount already paid in said monthly payments of $150.00." (Italics supplied) Victor R. Mowry (appellants' testator) died April 29, 1949. On April 14, 1950, appellee in compliance with paragraph "4" of the agreement, elected option (a) of paragraph "2" as the method of payment, and so notified appellants.

The controversy revolves about the question of the amount of the consideration *fixed by the agreement.*

Appellants contend that thereunder appellee is obligated to pay the net worth of the share determined

as of December 31 preceding the *date of death* (April 29, 1949), viz.: December 31, 1948. Appellee, on the contrary, maintains that the purchase price is definitely fixed by clause "2 a" of the agreement (unaffected by any other of its provisions), to wit: payment of *"at least* $150 per month for a period of 15 years", viz.: $27,000. *Standing alone* this clause (if the phrase "at least" be eliminated) undoubtedly constituted a definite and unequivocal contract. But clause "2 a" must be read *in conjunction* with clauses "2 b" and "3". If the survivor elects to pay in instalments under option "2 a", which he did, but desires to liquidate his indebtedness at any time during the 15 year period, he is permitted to do so by paying 40% of the net worth as of December 31 *"preceding the death"*, with credit given for all instalments theretofore paid. Had appellee elected to pay for the stock in a *lump sum*, instead of in instalments, he would, under clause "2 b", have been able to liquidate his obligation by paying appellants 33-1/3% of the net worth of the corporation "as of the preceding December 31st".

The result which would follow the adoption of the contention of appellee and the decision of the court below is truly incongruous. All clauses of the agreement must be read in conjunction with each other and the document construed in its entirety: see former opinion and cases therein cited. In our prior decision, in the absence of evidence concerning the "net worth" of the corporation, we hypothesized such value. We used $180,000 merely by way of illustration (p. 237). An absurd result would follow. Under the court's decision all appellee had to pay was $27,000 in instalments of $150 a month for 15 years. Had he elected to pay in a lump sum, he would have been required to pay 33-1/3% of such hypothetical net worth, i.e., $60,000. And if appellee elected under clause "2 a"

to pay in instalments, under clause "3" of the agreement, if he desired to anticipate payment of remaining unpaid instalments he could do so by paying 40% of such value, or $72,000, with credit for all previous instalments already made. Ordinarily a person is rewarded for anticipating payments, not penalized.

Furthermore "2 b" provided ascertainment of net worth *"as of the preceding December 31st"* while clause "3" stipulated "December 31st *preceding the death"*. It has been contended the words "as of the preceding December 31st" mean from the *"date of the agreement"*. Appellants maintain, to the contrary, these words plainly referred to the *death of testator*, not the date of the agreement. It was for these reasons that we considered that proof of surrounding facts and circumstances might shed light upon the words of the agreement. Since no such evidence is before us, interpretation and construction must be made without such aid.

The court below, from the corporate balance sheets and tax returns, fixed the "net worth" of the corporation on both dates. On December 31, 1942 (relating to date of agreement), the figure was $50,934.37 (in plaintiffs' exhibit 4, p. 122a, $50,944.37) and on December 31, 1948 (relating to the date of death), it was "approximately $102,000".

Construing the agreement in its entirety, it is manifest that the parties did not intend to covenant that the purchase price of the stock of the decedent should be $27,000 payable in monthly instalments of $150 over 15 years. It seems incredible that the parties would have agreed that the appellee would be penalized if he paid in a lump sum or anticipated payment of instalments. Such contention also overlooks entirely the words *"at least"* in clause "2 a". Should the net worth of the corporation, however, be determined in relation to *date of death*, fixed by the court

below at "approximately $102,000", the intention of the parties then appears clear. Appellants' one half of $102,000 would be $51,000. Such consideration may be paid in instalments of "*at least*" $150 per month over a period of 15 years. Such instalments therefore must be made in such amounts and in such additional sums as will be necessary to liquidate the indebtedness within 15 years. By the agreement, appellee had the election to accelerate the payment of such instalments by paying 40% of the net "net worth" of the corporation or $40,800 (instead of $51,000) with credit for all instalments theretofore paid. But if appellee had elected to pay the whole consideration in a lump sum he could do so by paying 33-1/3% of such net worth or $34,000. Such a contract is understandable and obviously is what the words indicate.

Apparently appellee's contention is that should it be held that the consideration was not definitely fixed at $27,000, the "net worth" of the corporation must be considered in relation to the *date of the contract* and not the date of the death. The value at that date was fixed by the court below at $50,934.37. Appellants' half interest would therefore have been $25,467.19. Even under this theory appellee would have thus been paying $27,000 as the consideration, $1,532.81 more than such value thus calculated. In the absence of surrounding facts and circumstances it clearly appears, from the language of the agreement, that the parties intended to pay the value existing *at date of death*. Had the parties intended that the consideration should be a specified sum they would have so provided. The fact that on December 4, 1941, appellants' testator agreed to sell his stock for $10,000, has no relation to its value at the date of the agreement, April 21, 1943, or at the date of death, April 29, 1949.

We do not regard the testimony of the three witnesses (the court below in its opinion only referred to two) as proving that the parties *interpreted* their agreement as decreed by the court below. At most this testimony amounted to but declarations against interest. Witness Deeds testified that appellants' testator told the witness that in the event of appellee's death Mr. Mowry would have to pay Mr. McWherter's widow $150 a month *but did not mention for what length of time.* Witness Aukerman testified to the same effect. The third witness, not mentioned by the court below, was Mr. MacLeod. This witness testified that Mr. Mowry told him that under the agreement, in case of his death, he would pay Mr. McWherter's widow $150 per month for 15 years, and *that this was the "fixed" amount of the consideration.* Where the meaning of a contract is ambiguous, an interpretation given by the parties themselves will be favored: *Baker's Trust Estate,* 333 Pa. 273, 276, 3 A. 2d 785; *Philadelphia v. Philadelphia Transportation Company,* 345 Pa. 244, 251, 26 A. 2d 909; *Monongahela Street Railway Co. v. Philadelphia Company,* 350 Pa. 603, 618, 39 A. 2d 909; *Armstrong v. Standard Ice Co.,* 129 Pa. Superior Ct. 207, 213, 195 A. 171; *O'Neill v. Atlas Automobile Finance Corporation,* 139 Pa. Superior Ct. 346, 354, 11 A. 2d 782. But here the testimony of these witnesses, in the nature of declarations against interest by *one* of the parties, is by no means an interpretation of the entire contract by *both.* Furthermore, the testimony of Mr. MacLeod is clearly contrary to the terms of the agreement since, even under appellee's construction, the witness has not regarded all of its provisions.

In determining the "net worth" of the corporation, the court below fixed same from the corporate balance sheets and tax returns. No evidence was adduced by

either side relative to the *intrinsic value* of the assets. Book value is ordinarily insufficient to determine "net worth". This proceeding being in the nature of a declaratory judgment we do not purport by this opinion to accurately determine the "net worth" of the corporation. This is normally ascertained by an appropriate appraisal.

Appellants are entitled to receive as compensation for the sale of the stock the net worth of the corporation as of *December 31, 1948*; that unless proven otherwise by a fair and accurate appraisement of the assets, such "net worth" as determined by the court (taken from defendant's exhibit B (p. 123a) at $94,428.22, but stated by the court (p. 134a) as "approximately $102,000") shall be regarded as such value. Since M. C. McWherter, the appellee, has elected to liquidate such indebtedness in instalments under section "2 a" of the agreement, he may pay at least $150 per month for a period of 15 years, i.e. each instalment may not be *less than* $150 per month, but as much more, in addition thereto, as is necessary to liquidate the full consideration, so fixed, within the specified period of 15 years.

The decree of the court below is reversed, at the cost of appellee, and the record is remitted with direction to enter an appropriate decree in accordance with this opinion.