## Peterson v. Young

*W. Justin Carter, Jr.,* and *H. Joseph Hepford,* for plaintiffs.

*Compton, Handler & Berman,* for defendant.

NEELY, J., September 24, 1956.—In this action in assumpsit suit was brought by plaintiffs to recover from defendant the purchase price of a certain lot of land situated at 1832 Derry Street, in the City of Harrisburg, with a dwelling house thereon erected, conveyed by plaintiffs to defendant's wife, Sarah Brooks Young, by deed dated September 2, 1950. Subsequently the wife by the conveyance of an interest therein to defendant created a tenancy by the entireties in these premises. Although the contract for the sale of the property was oral, it became executed when the deed of September 2nd was delivered. The jury brought in a verdict in favor of plaintiffs in the sum of $3,645, consisting of $3,000 as the purchase price of the property and interest in the amount of $645.

Defendant filed motions for judgment n. o. v. and for a new trial. The matter is now before us on these motions. The essence of defendant's argument in support of these motions is that the evidence in the light most favorable to plaintiffs merely shows that defendant made a verbal promise to answer for the debt of his wife, that such promise contravened the statute of

frauds in that it was an oral promise to answer for the debt of another and, therefore, defendant argues there can be no recovery.

The testimony is that these three plaintiffs inherited the property from Minnie Briscoe, their aunt, who died on July 9, 1950. Evidence was offered by plaintiffs to show that prior to the conveyance of the premises to defendant's wife, there was an oral promise by defendant to pay the sum of $3,000 as the purchase price therefor, and that no part of that purchase price has been paid.

The difficulty with defendant's argument is that the evidence adduced by plaintiffs does not clearly establish that defendant had promised merely to pay the debt of his wife but, on the contrary, indicates that he was subserving a purpose of his own and that the promise to pay was in furtherance of his own interests. If the testimony is believed, it was on the strength of his promise to pay that defendant acquired an interest in and possession of these premises. When a person is subserving his own purpose or interest his oral promise to pay money should not be considered as being within the statute of frauds. He creates by such promise his own obligation which is not merely an undertaking to answer for the debt of another, even though he would thereby discharge the debt of another. In Bailey v. Marshall, 174 Pa. 602 (1896), the Supreme Court held when the leading object of the promisor is to subserve some interest or purpose of his own, even though the effect is to discharge the debt of another, his promise is not within the statute of frauds. See also Crawford v. Pyle & Brown, 190 Pa. 263 (1899), where our Supreme Court held that defendants' parol guaranty was not within the statute of frauds because they "were interested in the debt guaranteed".

Chesley Briscoe testified that in a conversation with defendant and his wife at 612 Peffer Street, in the City

of Harrisburg, shortly after the death of Minnie Briscoe, they both stated that they would pay $3,000 for the property at 1832 Derry Street. This conversation was prior to the execution of the deed on September 2, 1950, and followed a previous conversation he had with Mrs. Young. Chesley Briscoe also testified there had been a conversation between himself and Mr. Young alone at 612 Peffer Street before the deed was executed. All arrangements concerning the sale of the property were oral.

Mrs. Peterson, one of the plaintiffs, testified she had a conversation with defendant in July of 1950 concerning the sale of the Derry Street property. She testified that both defendant and his wife expressed themselves as being satisfied with the proposition and several times they both stated they were pleased plaintiffs were going to let them have the property for $3,000. There is evidence from the testimony of both Mrs. Peterson and Chesley Briscoe from which the jury could have determined that defendant promised to pay $3,000 for the property.

After conveyance of this property on September 2, 1950, defendant and his wife moved into the premises. There were thereafter a number of transactions pertaining to this property. A mortgage was executed by defendant and his wife in favor of the Capital Bank and Trust Company on April 24, 1951, in principal amount of $6,500. This mortgage was satisfied on July 11, 1951. On July 16, 1951, the property was deeded by Mrs. Young to defendant and herself as tenants by the entireties, and on that date a mortgage was placed in favor of the Harris Building and Loan Association in the amount of $6,500 which was satisfied on August 26, 1952, and on July 16, 1951, a mortgage for $3,000 was placed in favor of Ruth W. Thompson. When defendant's wife died on March 2, 1952, a fee simple

title by operation of law vested in defendant. On August 4, 1952, a mortgage in the amount of $7,100 was executed by defendant to Harris Building and Loan Association.

The evidence is that subsequent to and after the death of defendant's wife, he, defendant, made frequent promises to pay the purchase price of this property. The record is replete with testimony introduced by plaintiffs concerning promises of defendant to pay. Chesley Briscoe testified that on numerous occasions after September 2, 1950, defendant promised to pay the sum of $3,000. According to plaintiffs' testimony, defendant stated to Mrs. Peterson in July of 1951 that plaintiffs should "have no fear, that we would get our money . . . have no fear, that we would be paid". Mrs. Peterson testified that on several occasions defendant set dates for payment.

Weaver Briscoe's testimony is that defendant on three different occasions in Washington, D. C., made promises to pay. Plaintiff's attorney in Washington, Mr. Harris, testified in June 1952, in that city defendant promised to pay the sum of $3,000. He stated to Mr. Harris payment would be made on or about August 1, 1952.

Mr. Forrest Mercer, of our bar, who was defendant's attorney and drew the deed for the conveyance of this property, stated on the witness stand that on two or three occasions defendant indicated his intention to pay plaintiffs their money. Mr. Mercer testified that on one occasion defendant advised him he had arranged to pay the money in August 1952.

It is a well recognized rule that in determining the meaning of a contract that is in any way indefinite or ambiguous (and the oral agreement for the sale of the property in question was somewhat indefinite and ambiguous), the interpretation placed thereon by the par-

ties themselves is an important consideration. In fact the courts will generally follow the practical interpretation which the parties place upon a doubtful contract: Ziegenfuss v. Ziegenfuss, 160 Pa. Superior Ct. 374, 377 (1947); Rochester and Pittsburgh Coal & Iron Co. v. Makoma Coal Co., 271 Pa. 394 (1921); Baker's Trust Estate, 333 Pa. 273 (1939); Monongahela Street Railway Co. v. Philadelphia Company, 350 Pa. 603 (1944); Cirotti v. Wassell, 163 Pa. Superior Ct. 292 (1948).

Defendant's promises of payment subsequent to the conveyance were cumulative evidence tending to show that defendant recognized his obligation under the parol contract by accepting his liability for the purchase price. These subsequent promises would support the inference that defendant had an interest which he was subserving by the promises of payment which he made prior to the conveyance of September 2, 1950.

Defendant denied plaintiffs' testimony that he made frequent promises to pay either before or after the conveyance of September 2, 1950. On the contrary, he contended his wife alone had purchased the property. It was for the jury to determine where the truth lay.

The matter is now before us on defendant's motion for judgment n. o. v., and we must accept the testimony in the light most favorable to plaintiffs and resolve all inferences to be drawn from the evidence in their favor. Since this was an oral contract which was disputed by defendant, it was exclusively the function of the jury to determine the terms of the contract and the understanding of the parties as expressed by its terms. In construing a disputed oral contract, it is for the jury to find what meaning is to be ascribed to the terms employed in the light of the circumstances surrounding the agreement when it was made: McCormack v. Jermyn, 351 Pa. 161 (1945). In Smail v. Penowa Coal

Sales Company, 170 Pa. Superior Ct. 312, 316 (1952), the Superior Court said:

"The terms of a disputed oral contract and the understanding of the parties as expressed by those terms are matters of fact and therefore for jury determination. . . . Also, it is settled law in Pennsylvania that a case supported by competent oral testimony, no matter how strong may be the countervailing testimony, is for the jury."

Under these decisions, the terms of the oral contract in this case were essentially a question for the jury.

The substantial question in this case relates to consideration. Was the conveyance to defendant's wife sufficient consideration to support defendant's promise to pay the purchase price, the jury having found under our instructions that defendant did promise to pay? This was a matter of first impression at the trial and we instructed the jury as follows:

". . . Was there a promise made on the part of the defendant to pay for this property? Did he make a promise directly to pay for this property because he was getting something? When this property was deeded to his wife, he did acquire at least an inchoate interest in that property. He did subsequently move into possession of the property. Was this the consideration which he received for the promise which he made to pay for this property, if he did make such a promise?"

Pursuant to the request of defendant's counsel for additional instructions, we further charged:

"Ladies and gentleman of the jury, the defendant has asked us to instruct you as to what the court meant when we said to you that by the transfer of title to his wife the defendant thereby acquired a certain inchoate right. Under the law of Pennsylvania, when a wife takes title to real estate, a husband has a certain statu-

tory interest in that real estate . . . it is an interest that cannot be divested without his signature. It is an interest that may develop into a vested interest, if, for example, his wife should die. An inchoate right is a right that has not vested, but there is an interest there."

A wife's inchoate right of dower was construed by the Supreme Court in Adamson v. Souder, 205 Pa. 498 (1903).

Our own research at the trial revealed no decisions that would throw light on the question of the sufficiency of the consideration moving to defendant by virtue of the conveyance to his wife. At the oral argument we requested counsel to furnish us with the benefit of their own research on this point. To date they have submitted no authorities dealing with this matter and further research on our part has shed no additional light on this question. After further deliberation, we believe that our instruction on this point at the time of the trial was correct and we adopt that instruction herein quoted as being a correct expression of the law.

Defendant received a consideration in the form of a very real benefit. He acquired not only the inchoate and statutory right to the premises referred to in our charge, but he also acquired possessory rights and actually took possession of this property which he now owns in fee. Notwithstanding the earnest and able argument of defendant's counsel to the contrary, we think there was sufficient consideration moving to defendant for the promise which he had made to pay for this property.

The complaint certainly was not carefully drawn. Although it pleads in paragraph seven that Sarah Brooks Young, the wife of defendant, promised to pay and that after the conveyance defendant promised to pay his wife's debt, it also pleads in paragraph nine

that Sarah Brooks Young and defendant promised to pay the purchase price at the time of the execution of the deed. And the evidence shows not merely a promise by defendant to answer for the debt of his wife, but also his own promise to pay a debt to be incurred by him when the property was conveyed. If plaintiffs had shown there was merely a promise to pay for the debt of defendant's wife, there could have been no recovery. Plaintiffs could have recovered only if the promises pleaded created a distinct obligation in defendant himself, supported by adequate consideration. There was testimony that this was defendant's obligation.

Since defendant joined issue by filing a responsive answer and proceeding to trial, and there being testimony that the promise to pay was made by defendant to subserve his own interest, we believe the question was for the jury. It was for the jury to say in the light of all the circumstances surrounding the transaction what was the agreement of the parties. Since the jury brought in a verdict in favor of plaintiffs and that verdict is supported by competent testimony, defendant's motion for judgment n. o. v. must be overruled.

Defendant has filed a motion for a new trial on the grounds that the verdict was against the law, the weight of the evidence and the charge of the court. Although defendant reserved the right to file additional reasons, he has not done so. We feel that what we have said herein adequately disposes of the matter raised in defendant's motion for a new trial, and accordingly, therefore, that motion is dismissed.

*Order*

And now, September 24, 1956, defendant's motion for judgment n. o. v. and also his motion for a new trial are herewith overruled.