## O'Mara v. The Pennzoil Company

*Henry Graff*, for plaintiffs.

*Murray R. Garber, McDowell, McDowell, Wick & Daly*, for defendant.

MENCER, P. J., March 30, 1965.—On February 12, 1896, John J. Carter and Emma Gibbs Carter, his wife, conveyed all of the petroleum, oil and gas lying or being within or under a 125.8-acre tract in Foster Township to the State Oil Company. This conveyance contained the following clause:

"TO HAVE AND TO HOLD unto the said State Oil Company, its successors and assigns, the estate and rights hereby granted, as long as oil and gas are produced therefrom and the taxes paid as herein provided. And it is expressly understood and agreed that the said party of the second part, its successors and assigns, shall and will, from time to time, and at all times, hereafter during the operation of the said premises aforesaid, well and truly pay all rates, taxes, duties, charges and assessments whatsoever, that shall or may be assessed, charged, rated or imposed upon the aforesaid premises or any part thereof; and thereof and therefrom save harmless and keep indemnified the said John J. Carter, his heirs, executors, administrators and assigns and also his and their goods and chattels, lands and tenements".

The State Oil Company, by deed dated June 1, 1903, conveyed to South Penn Oil Company, now known as Pennzoil Company, all of the petroleum, oil and gas lying, or being within or under, the lands conveyed by Carter and subject to the same clause as set forth above.

The surface of said land was conveyed by John J. Carter and wife to Jecal Company by deed dated February 16, 1906, and subsequently was conveyed by the Jecal Company to Edward S. O'Mara by deed dated June 16, 1914. The herein plaintiffs acquired surface

rights to a portion of said land on December 30, 1953, from the estate of Edward S. O'Mara, deceased, by deed recorded in deed book vol. 335, at page 158 of McKean County records.

Defendant paid all of the taxes, including those assessed to the surface, on the property of E. S. O'Mara, from the time of his purchase of said property from Jecal Company in 1914 until the year 1955, but refused to pay taxes on plaintiffs' property. This suit followed such refusal, and the parties stipulated that the case be tried by the court without a jury. The court hereby makes the following

### FINDINGS OF FACT

1. Plaintiffs are James O'Mara and Mary K. O'Mara, husband and wife, residing in Foster Township, McKean County, Pa.

2. Defendant is Pennzoil Company, a corporation having offices in the City of Bradford, State of Pennsylvania, and is the successor to South Penn Oil Company.

3. John J. Carter and Emma G. Carter, his wife, by deed dated February 12, 1896, granted and conveyed to the State Oil Company all the petroleum, oil and gas lying, or being within or under, a certain 125.8-acre tract of land in Foster Township, McKean County, Pa.

4. The said deed of February 12, 1896, contained the following clause:

"TO HAVE AND TO HOLD unto the said State Oil Company, its successors and assigns, the estate and rights hereby granted, as long as oil and gas are produced therefrom and the taxes paid as herein provided. And it is expressly understood and agreed that the said party of the second part, its successors and assigns, shall and will, from time to time, and at all times, hereafter during the operation of the said premises aforesaid, well and truly pay all rates, taxes, duties,

charges and assessments whatsoever, that shall or may be assessed, charged, rated or imposed upon the aforesaid premises or any part thereof; and thereof and therefrom save harmless and keep indemnified the said John J. Carter, his heirs, executors, administrators and assigns and also his and their goods and chattels, lands and tenements".

5. The State Oil Company, by deed dated June 1, 1903, conveyed to South Penn Oil Company all the petroleum, oil and gas lying or being within or under said 125.8-acre tract, and the conveyance was subject to the same clause as set forth in finding of fact no. 4 above.

6. South Penn Oil Company is now the Pennzoil Company.

7. John J. Carter, by deed dated February 16, 1906, granted and conveyed to Jecal Company, inter alia, the said 125.8-acre tract, subject to the conveyance of the mineral interest conveyed to State Oil Company, as set forth in finding of fact no. 3, and also the clause set forth in finding of fact no. 4.

8. Jecal Company, by deed dated June 16, 1914, granted and conveyed to Edward S. O'Mara, inter alia, the said 125.8-acre tract, subject to the same conveyance of the mineral interest conveyed to the State Oil Company and the same clause as set forth in finding of fact no. 4.

9. Edward S. O'Mara died September 25, 1953.

10. The last will and testament of Edward S. O'Mara was probated on October 1, 1953, and on the same day letters testamentary were issued to James O'Mara.

11. On December 11, 1953, James O'Mara petitioned the Orphans' Court of McKean County, as executor of the estate of Edward S. O'Mara, to sell a portion of the said 125.8-acre tract to James O'Mara and Mary K. O'Mara, husband and wife.

12. On December 22, 1953, the Orphans' Court of McKean County approved the sale of a portion of the said 125.8-acre tract by the estate of Edward S. O'Mara to James O'Mara and Mary K. O'Mara, husband and wife, and ordered the clerk of the orphans' court to execute and deliver to James O'Mara and Mary K. O'Mara a deed for the land in question, and, by deed dated December 30, 1953, the clerk of the orphans' court complied with said order.

13. At the present time, plaintiffs are the owners of the land described in said deed, dated December 30, 1953, subject to the oil and gas rights belonging to defendant, as set forth in deed from Carter to State Oil Company, dated February 12, 1896, being deed referred to in finding of fact no. 3 above.

14. Plaintiffs have erected a one-story frame dwelling on the lands described in deed dated December 30, 1953, which said house was erected thereon at a date subsequent to acquisition of said lands by plaintiffs.

15. South Penn Oil Company, predecessor to defendant, and defendant paid all taxes on the surface and improvements on the lands acquired by Edward S. O'Mara from Jecal Company, Limited, by deed dated June 16, 1914, until 1955, at which time it refused to pay taxes on the land and buildings of plaintiffs herein.

16. South Penn Oil Company, predecessor to defendant, and defendant paid all taxes on the land and buildings of the remaining lands of Edward S. O'Mara acquired from Jecal Company, Limited, other than those sold to plaintiffs, up to 1962, at which date it refused to pay taxes on lands and buildings conveyed to Sunnybrook Dairies by the estate of Edward S. O'Mara, although said lands comprised part of the original O'Mara lands acquired from Jecal Company, Limited.

17. Defendant and its predecessor have paid all taxes on the land and buildings of the property in the name of Edward S. O'Mara acquired from Jecal Com-

pany, Limited, by deed dated June 16, 1914, so long as said lands remained in the name of Edward S. O'Mara or his estate, but refused to pay taxes on land or buildings assessed to the name of plaintiff or to Sunnybrook Dairies, although said properties originally had been part of said O'Mara lands.

18. By letter dated May 31, 1935, South Penn Oil Company, now the Pennzoil Company, informed Edward S. O'Mara that the company was not required to pay the taxes on lands and buildings, and that it had paid the taxes in error for the period of 1914 to 1934.

19. By letter dated June 13, 1935, Edward S. O'Mara informed the South Penn Oil Company, now the Pennzoil Company, that they were required to pay the taxes under the terms of conveyance set forth as finding of fact no. 3, and thereafter, the South Penn Oil Company did continue to pay all taxes until 1955.

20. The taxes due on the lands and buildings of plaintiffs on the lot herein for the six-year period from 1957 through 1962 amounted to a total of $1,331.58, broken down into $1,281.93 for tax on buildings and $49.65 for tax on land, said taxes being calculated at gross tax less two percent discount allowed for prompt payment.

21. Plaintiffs have paid all taxes on the property, including land and buildings belonging to them, since acquisition of title thereto.

22. Defendant has refused to pay taxes on land and buildings assessed to plaintiffs from the date of acquisition of the land by plaintiffs, and erection of the building thereon.

### Discussion

This court must decide the intentions of the parties as expressed in the clause in the conveyance of February 12, 1896. The standard for the interpretation of words is their natural meaning to the parties who have

contracted at the time and place where the contract is made, considering all the circumstances surrounding it. Words are to be construed according to their primary acceptation, unless from the context of the instrument and the intention of the parties to be collected from it, they appear to be used in a different sense: Huffman v. Huffman, 311 Pa. 123, 127. It is permissible to consider the apparent purpose of the parties in entering into the contract as an aid to interpretation. An interpretation which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect: Rothstein v. Jefferson Ice Mfg. Co., 137 Pa. Superior Ct. 298, 306, citing Restatement, Contracts, §236.

All contracts must be construed with reference to their subject matter and obvious purposes, and, however general the language may be, their scope and effect are necessarily so limited and controlled: Alcorn Combustion Co. v. Kellogg Co., 311 Pa. 270, 274. The construction placed upon a disputed contract by the parties thereto, as shown by their acts and declarations, will ordinarily be adopted, and will be referred to in determining the true nature of the agreement: O'Neill v. Atlas Automobile Finance Corporation, 139 Pa. Superior Ct. 346, 354. In construing contracts, the parties must be held to have used ordinary words in their ordinary and accepted meaning: Provident Trust Company of Philadelphia v. Equitable Life Assurance Society, 316 Pa. 121, 124, 125, citing, Restatement, Contracts, §§235, 236.

In the court's endeavor to determine the intention of the parties, there are certain parts of the clause in question which seem to merit special attention:

A. The first sentence conditions and establishes the duration of the conveyance in two ways: (1) The State

Oil Company, its successors and assigns, shall have and hold the estate and rights granted, as long as oil and gas are produced therefrom, and (2) as long as the taxes are paid as provided by the terms of the conveyance.

This initial provision suggests to the court the importance and emphasis which the parties placed upon the matter of paying taxes. It would seem that this matter of taxes was an important element of the consideration supporting the conveyance itself.

B. The second point to be noted in an examination of the clause in question is the fact that the obligation to pay taxes is placed upon the State Oil Company, its successors and assigns, with the further stipulation that this obligation should continue from time to time and at all times, "hereafter during the operation of the said premises", for oil and gas. This would stress the intent for this obligation to run until such time as operations for oil and gas ceased and the minerals reverted back to the grantors or their assigns. It is also evident that this obligation was intended to be imposed on the successors and assigns of the State Oil Company, which would certainly include defendant in this case.

C. The third provision in the clause in dispute which is of special significance is the provision that all "rates, taxes, duties, charges and assessments whatsoever that shall or may be assessed, charged, rated or imposed upon the aforesaid premises or any part thereof" should be the obligation of the State Oil Company, its successors and assigns. This language is most broad and general and, in terms which are not ambiguous or uncertain, discloses the intent to pay all taxes imposed upon the aforesaid premises at the time of the conveyance and also those which would be assessed, charged, rated or imposed thereafter.

D. There is a fourth matter of interest and great

importance. This fourth item is the word "tenements", which is used in connection with the words "goods and chattels, lands and tenements", of John J. Carter, his heirs, executors, administrators, and assigns. The word "tenements" includes buildings and improvements upon lands, and indicates, in connection with the other words used, that it was John J. Carter's intention that this provision for payment of taxes would include not only lands but also goods, chattels and tenements, and that it would run to his benefit and favor and also to his assigns, which include plaintiffs in this case.

It is the court's belief that John J. Carter, as a condition for transferring his interest in the minerals underlying the land in question, provided that the State Oil Company and its assigns should pay all taxes on the surface and improvements thereon, both at the time of the conveyance and at all times thereafter during the operation of the premises. He further provided that this beneficial arrangement would run in favor of his assigns, and would include taxes on personal property as well as lands, and upon tenements which include improvements as well as lands. The language is broad, but it is clear and all inclusive. The State Oil Company accepted this unusual provision and bound themselves, their successors and assigns, because they desired to operate this property, even though it meant agreeing to an additional expense in the form of paying taxes as required by John J. Carter. The mere fact that time has confirmed that John J. Carter was the superior bargainer and that he was able to obtain the consent of the State Oil Company to a provision which now is undesirable to the present defendant does not change or void the terms of the agreement, which the State Oil Company was not required to accept, but which they did accept in order to obtain the rights to the valuable minerals underlying the premises in question.

The parties evidenced their understanding of the language by the fact that defendant and its predecessor in title did pay all of the taxes, including those assessed to surface and improvements, for a period of 60 years. It is further evident that the parties understood the tax obligation of the 1896 conveyance when, in 1935, by an exchange of letters between defendant and E. S. O'Mara, the question of payment was raised and, upon being reminded by Mr. O'Mara that defendant was obligated by the terms of the conveyance to pay the taxes, defendant did so for 20 more years before discontinuing payments for the first time in 1955.

It has been conceded by defendant that the word "premises" includes surface and improvements thereon, as well as mineral rights located beneath the surface: Littlejohn v. Rincoe, 159 Pa. Superior Ct. 588.

However, defendant asserts that the mere fact that the taxes were paid for 60 years does not preclude them from raising the question of payment at this time. The court agrees with this contention, but believes that this is of little avail to defendant. The rule, as expressed in Northern Liberties Gas Company v. United Gas Improvement Company, 348 Pa. 433, is that, when the terms of a contract are doubtful or capable of two different interpretations, the meaning put on the instrument by the parties themselves may be shown and will be enforced by the courts. If this rule covered the present case, it would work against defendant, because, by the payment of the taxes for 60 years, defendant has evidenced most clearly its understanding of the terms of the conveyance as they apply to the payment of taxes. On the other hand, where the contract is not ambiguous or uncertain in its terms, and the intention of the parties, as disclosed by its provisions, is not doubtful, a construction acted upon by the parties which is inconsistent with the clear

terms of the contract is not controlling: Tustin v. Philadelphia & Reading Coal & Iron Company, 250 Pa. 425. Thus, it can be seen that it is only where the intention of the parties is clearly disclosed by the contract, and yet one of the parties by its actions places a contrary interpretation on the agreement, that such action is held to be not controlling and is disregarded by the courts. This court believes that the language in the conveyance of 1896 does express the intention of the parties in language which is not ambiguous or uncertain in its terms, and that the action of defendant for 60 years in paying the taxes was in conformity and fulfillment of the terms of the conveyance.

Defendant, in its brief, acknowledges that there are no decisions which are squarely in point with the question to be decided by this court, except for the case of Seaboard Radio Broadcasting Corporation v. Yassky, 176 Pa. Superior Ct. 453. The Yassky case dealt with the interpretation of two clauses in a landlord-tenant agreement. The one clause dealt with the lessee's obligation to pay, as additional rent, all charges for water consumed upon the demised premises, provided there was a metered water connection to the premises. The Supreme Court relieved the tenant of this obligation, because under the fact situation in the Yassky case, there was no meter to measure the water in connection with the premises rented to the lessee. The second clause in the Yassky case dealt with the lessee's agreeing to pay as rent, in addition to the minimum rent provided in the lease, all taxes assessed or imposed upon the demised premises and/or the building of which the demised premises were a part. The Supreme Court held that the use of the phrase "and/or" resulted in ambiguity, which precluded an interpretation of the clause to include taxes on any other portion of the building except the two floors occupied by the lessee. In our case, the language of the conveyance is crystal

clear and is not ambiguous, and, therefore, the intent of the parties must prevail, and the Yassky case is easily distinguishable.

In conclusion, this court construes the clause in question to require defendant to pay all taxes imposed upon the premises described in the 1896 conveyance, irrespective of whether the taxes pertain to minerals, surface or improvements placed upon the surface. The court, therefore, makes the following

#### CONCLUSIONS OF LAW

1. The provisions of the deed of February 12, 1896, between John J. Carter and Emma G. Carter, his wife, and the State Oil Company required the State Oil Company, its successors and assigns, to pay all the taxes on the 125.8-acre tract in question, including taxes assessed to the surface and to improvements and buildings placed thereon, both as of the time of the conveyance and as to all improvements added subsequent to February 12, 1896.

2. The requirement to pay taxes under said deed of February 12, 1896, was for the benefit of John J. Carter, his heirs, executors, administrators and assigns, and was imposed on the State Oil Company, its successors and assigns.

3. James O'Mara and Mary K. O'Mara are assigns of John J. Carter and Emma G. Carter.

4. The Pennzoil Company is an assign of the State Oil Company.

5. Plaintiffs' claim for back taxes is limited by the statute of limitations to a six-year period, commencing with the year 1962, and running backwards through the year 1957.

6. The Pennzoil Company was legally obligated to pay the taxes for the years 1957, 1958, 1959, 1960, 1961 and 1962 on the property, including improvements, of James O'Mara and Mary K. O'Mara, said taxes, less two percent discount allowed by law, being in the amount of $1,331.58.

## ORDER

Now, March 30, 1965, the court does hereby find for plaintiffs and against defendant, in the amount of $1,-331.58, being the amount of taxes, less the allowable two percent discount, imposed upon plaintiffs' property for the years 1957 through and including the year 1962. The prothonotary is directed to file this decision and to give notice thereof forthwith to the parties or their attorneys. If no exceptions thereto are filed within 30 days after service of such notice, judgment shall be entered thereon by the prothonotary, in said amount.