479 A.2d 1027

**ROBERT WOOLER COMPANY**

v.

**The FIDELITY BANK, Wayne Raichle and Donna E. Raichle and Touche Ross & Co.**

**Appeal of The FIDELITY BANK.**

Superior Court of Pennsylvania.

Argued May 7, 1984.

Filed June 29, 1984.

Reargument Denied Sept. 4, 1984.

524

526

Michael G. Trachtman, Norristown, for appellant.

Steven T. Stern, Philadelphia, for Wooler, appellee.

Michael L. Temin, Philadelphia, for Touche, appellee.

Before WIEAND, MONTEMURO and HOFFMAN, JJ.

WIEAND, Judge:

This appeal requires that we review the nature and extent of the duty owed by an accounting firm to the company

which retained it to perform unaudited services. It also requires that we review the circumstances under which interest may be added to a tort verdict based on negligence.

Robert Wooler Company (Wooler), a corporation, filed suit against The Fidelity Bank (the Bank) to recover a loss sustained when Wooler's bookkeeper, Donna Raichle, diverted 94 Wooler checks into a personal account maintained by Raichle and her husband at the Bank. The complaint alleged that the Bank had accepted checks for deposit which contained forged corporate endorsements and, therefore, was liable for conversion under 13 Pa.C.S. § 3419. The complaint also contained averments that the Bank had failed to exercise reasonable care and had failed to handle the forged instruments in accordance with reasonable commercial standards. The Bank joined Raichle as an additional defendant. It also joined Touche Ross & Co. (Touche Ross), the accounting firm employed by Wooler, alleging that the accountant had enabled the Wooler loss to go undetected by negligently performing accounting services which it had been contractually obligated to perform. Touche Ross filed preliminary objections alleging improper joinder. These objections were dismissed, and, after extensive discovery, the case came on for trial without jury.

Following trial, the court made findings of fact. It found that the Bank had converted the checks and had been guilty of negligence when it accepted checks payable to the corporation and credited the proceeds to Raichle's personal account.[1] The court found that Wooler had also been negli-

1. The Uniform Commercial Code, at 13 Pa.C.S. § 3419(a) provides that an instrument is converted when "it is paid on a forged indorsement." See: Anno., 23 ALR 4th 855 (1983). However, a depository or collecting bank, "who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands." 13 Pa.C.S. § 3419(c). This defense, as the statute expressly provides, is not available where a depositary or collecting bank has failed to act in a commercially reasonable manner. Accord: *Cooper v. Union Bank*, 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973); *National Surety Corp. v. Citizens State Bank*, 41

gent but that its contributory negligence had not been a substantial factor in bringing about its loss. On appeal, the Bank has not challenged the court's findings regarding its liability. It does challenge the manner in which the court disposed of the negligence of Touche Ross.[2] With respect to the accountant's liability, the trial court made the following findings.

24. Additional defendant Touche Ross and Co. is not liable for contribution to Fidelity or jointly liable or solely liable to Robert Wooler Company.

25. Additional Defendant Touce [sic] Ross and Co. is not liable as stated above on the theories set forth in Judge Takiff's Opinion. *Yardis v. First Pa. Bank N.A.* and *David H.L. Aron & Cogan, Sklar and Company,* [20 D. & C.3d 679 (1980)].

26. Additional Defendant is not liable in accordance with current legal theories as set forth above even though *it failed to use reasonable care* in being alert, and therefore, failed to make the necessary inquiries in accordance with reasonable professional standards so as to discover what was readily discoverable to it in order to protect plaintiff.

Colo.App. 580, 593 P.2d 362 (1978), *aff'd,* 199 Colo. 497, 612 P.2d 70 (1980); *National Bank of Georgia v. Refrigerated Transport Co.,* 147 Ga.App. 240, 248 S.E.2d 496 (1978); *Aetna Casualty and Surety Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721 (1981); *Sherriff-Goslin Co. v. Cawood,* 91 Mich.App. 204, 283 N.W.2d 691 (1979); *Salsman v. National Community Bank,* 102 N.J.Super. 482, 246 A.2d 162 (1968), *aff'd,* 105 N.J.Super. 164, 251 A.2d 460 (1969); *Sonnenberg v. Manufacturers Hanover Trust Co.,* 87 Misc.2d 202, 383 N.Y.S.2d 863 (1976); *North Carolina National Bank v. McCarley & Co.,* 34 N.C.App. 689, 239 S.E.2d 583 (1977); *Atlas Building Supply Co. v. First Independent Bank,* 15 Wash.App. 367, 550 P.2d 26 (1976). Compare: *Drug House, Inc. v. Keystone Bank,* 272 Pa.Super. 130, 414 A.2d 704 (1979).

**2.** The Bank has also attempted to argue on appeal that the opinion testimony of an expert witness produced by Wooler should not have been received because the record failed to show the facts upon which his opinion was based. However, this issue was not raised in the Bank's exceptions filed in the trial court; and, therefore, it has been waived. Pa.R.C.P. 1038(d). See also: *Red Oak Co. v. Kempton,* 298 Pa.Super. 516, 518, 445 A.2d 108, 109 (1982); *Zvonik v. Zvonik,* 291 Pa.Super. 309, 314 n. 2, 435 A.2d 1236, 1239 n. 2 (1981); *In re Custody of Frank,* 283 Pa.Super. 229, 233, 423 A.2d 1229, 1232 (1980).

27. Professionals such as Touche Ross & Co. cannot be like the three monkeys 'hear no evil, see no evil, speak no evil' in order to avoid liability to the plaintiff if liability were otherwise attachable. (emphasis added).

Judge Takiff's decision in *Yardis v. First Pa. Bank, et al.,* *supra,* upon which the trial court relied, had been decided on procedural grounds. It had there been held that in an action by a payee against a bank to recover losses sustained when the bank accepted forged checks for deposit, the payee's accountant could not be joined as an additional defendant. In the instant case, however, another judge of the Montgomery County Court of Common Pleas held prior to trial that the joinder of Touche Ross as an additional defendant had been proper and denied a preliminary objection asking that such joinder be stricken. Trial was thereafter completed with Touche Ross, the additional defendant, as a party and active participant.

Exceptions filed by the Bank to the court's adjudication were dismissed by a court en banc without opinion. After the Bank had appealed, the trial judge prepared a "Supplemental Opinion" in which he confirmed the prior basis for his refusal to impose liability upon Touche Ross but added his further conclusion that Touche Ross "had no duty to inquire into plaintiff's system of internal control."

The evidence adduced at trial discloses that accounting services may be audited or unaudited, depending upon the terms of the agreement between the accountant and the client. The principal difference between the two is the degree and amount of responsibility undertaken by the accountant. In both types of engagements the accountant agrees to prepare financial statements. In an audited engagement, the accountant assumes responsibility for the accuracy of the figures appearing thereon. In effect, he warrants the reliability of the report which he prepares. In an unaudited engagement, the accountant does not warrant and is not responsible for the ultimate accuracy of the report if the figures supplied by the client are erroneous.

Touche Ross was employed by Wooler in an unaudited engagement. The accounting firm contends that in such an engagement, an accountant has no duty to discern defects in the client's system of internal controls. This is the first issue we must resolve. Does an accountant so engaged have a duty to examine the means or procedures set up by the client to protect the assets of the business entity? If the accountant knows or has reason to know that the client's system of internal control contains defects which impair the client's financial security, what is the accountant's responsibility to correct them or call them to the attention of the client?

In *O'Neill v. Atlas Automobile Finance Corp.*, 139 Pa. Super. 346, 11 A.2d 782 (1940), this Court recognized that the specific scope of an accountant's duty to a client must be determined primarily by the terms and conditions of the contract of employment. There, an accounting firm had sued Atlas to recover sums allegedly due for unaudited accounting services. Atlas counterclaimed for losses sustained because of the accounting firm's alleged negligence in failing to discover that funds of the client were being embezzled by an employee. This Court upheld a verdict in favor of Atlas, holding that the contract of employment did not impose upon the accountants a duty to investigate and certify the regularity of the information supplied by Atlas' employees. In so doing, however, the Court approved a jury instruction regarding the accountants' duty of care as follows: "They [the accountants] agreed to *use such skill in the performance of their agreement as reasonably prudent, skillful accountants would use under the circumstances." Id.*, 139 Pa.Superior Ct. at 354–355, 11 A.2d at 786 (emphasis added).

The standard of care required of persons who render professional services has been stated in the Restatement (Second) of Torts § 299A as follows:

Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise

the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.[3]

This standard has been followed uniformly by the courts of this Commonwealth in determining claims predicated upon alleged negligence on the part of other professional persons. See: *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971) (the standard of skill and knowledge required of a physician is that possessed and employed by physicians generally in the same or a similar locality); *Bloomsburg Mills, Inc. v. Sordoni Construction Co.,* 401 Pa. 358, 164 A.2d 201 (1960) (client of architect has a right to expect architect to use "reasonable and ordinary care and diligence in the application of his professional knowledge to accomplish the purpose for which he is retained"); *Hoyer v. Frazee,* 323 Pa.Super. 421, 426, 470 A.2d 990, 993 (1984) (attorney has a duty to exercise "ordinary skill and knowledge").

Other jurisdictions, as well as most commentators, have adopted for accountants a standard of care similar in all respects to the standard set forth in section 299A of the Restatement. See: *Gantt v. Boone, Wellford, Clark, Langschmidt and Pemberton,* 559 F.Supp. 1219, 1227 (M.D.La.1983) (applying Louisiana law); *Vernon J. Rockler & Co. v. Glickman, Isenberg, Lurie & Co.,* 273 N.W.2d 647, 650 (Minn.1978), citing *Gammel v. Ernst & Ernst,* 245 Minn. 249, 253, 72 N.W.2d 364, 367 (1955); *Stanley L. Bloch, Inc. v. Klein,* 45 Misc.2d 1054, 1056, 258 N.Y.S.2d 501, 505–506 (1965); *Richard v. Staehle,* 70 Ohio App.2d 93, 97, 434 N.E.2d 1379, 1384 (1980); *Kemmerlin v. Wingate,* 274 S.C. 62, 64, 261 S.E.2d 50, 51 (1979); *Delmar Vineyard v. Timmons, C.P.A.,* 486 S.W.2d 914, 920 (Tenn.Ct.App. 1972); *Atkins v. Crosland,* 406 S.W.2d 263, 264 (Tex.Civ. App.1966), *rev'd on other grounds,* 417 S.W.2d 150 (Tex. 1967); *Prosser,* Law of Torts § 32, 161–163 (4th ed. 1971); Accountants' Liability for Negligence—A Contemporary

---

**3.** Comment b of section 299A specifically suggests that this standard is applicable to accountants.

Approach for a Modern Profession, 48 Fordham L.Rev. 401–421 (1979); Anno., Accountant's Malpractice Liability to Client, 92 A.L.R.3d 396 (1979).

The existence of a duty, it has been said, is a matter of foreseeability. Thus, in *Migyanko v. Thistlethwaite*, 275 Pa.Super. 500, 419 A.2d 12 (1980), this Court said:

> In determining the existence of a duty of care, the time honored test formulated by Judge Cardozo is that "[t]he risk reasonably to be perceived defines the duty to be obeyed . . . ." *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). See, e.g., *Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 186 A.2d 897 (1962), *cert. denied*, 374 U.S. 850, 83 S.Ct. 1915, 10 L.Ed.2d 1070 (1963); *Hoover v. Sackett*, 221 Pa.Super. 447, 292 A.2d 461 (1972). *Only when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff. Metts v. Griglak*, 438 Pa. 392, 264 A.2d 684 (1970); *Palsgraf v. Long Island Railroad Co., supra.*

*Id.*, 275 Pa.Superior Ct. at 505, 419 A.2d at 14 (emphasis added).

■ Touche Ross' agreement to perform unaudited services was not a shield from liability if it failed to warn its client of known deficiencies in the client's internal operating procedures which enhanced opportunities for employee defalcations. Its agreement, in the absence of specific language relieving it from acts of negligence, did not relieve it from liability for ignoring suspicious circumstances which would have raised a "red flag" for a reasonably skilled and knowledgeable accountant. Thus, in *1136 Tenants' Corp. v. Max Rothenberg & Co.*, 36 A.D.2d 804, 805, 319 N.Y.S.2d 1007, 1007–1008 (1971), *aff'd*, 30 N.Y.2d 585, 281 N.E.2d 846, 330 N.Y.S.2d 800 (1972) a New York court held that it was negligence for an accountant engaged to perform unaudited services to ignore suspicious circumstances and fail to inform the client of missing invoices, thereby enabling an employee's defalcations to go unnoticed. And in *United*

*States v. Natelli,* 527 F.2d 311, 320 (2nd Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976), it was held that auditors preparing an unaudited financial statement in connection with a proxy statement for filing with the Securities Exchange Commission had a duty to investigate suspicious circumstances. Similarly, in *Blakely v. Lisac,* 357 F.Supp. 255, 265–266 (D.Or.1972), it was held that an accountant preparing an "unaudited write-up" had to undertake at least minimal investigation of figures supplied and was not free to ignore suspicious circumstances. See also: *Ryan v. Kanne,* 170 N.W.2d 395, 404 (Iowa 1969) (accountant liable for negligence in preparing report of accounts payable even though statement unaudited and accountant expressly disclaimed knowledge that information was correct); *Bohhiver v. Graff,* 311 Minn. 111, 118–129, 248 N.W.2d 291, 297–299 (1976) (accountants having unaudited engagement to bring insurance company's books "up to date" are liable for negligence in failing to examine books made available to them when such an examination would have disclosed the insurance company's insolvency).

■ When Touche Ross agreed to provide unaudited accounting services for Wooler, it undertook to exercise that degree of accounting skill possessed by other accountants in the community. Touche Ross' obligation required that its personnel be reasonably alert to internal control defects which were patently obvious. Witnesses for the Bank and the accountant agreed that Wooler's internal controls had been defective and had thereby increased the potential for defalcations by a dishonest employee. They agreed that such a danger is inevitably present when the same employee is responsible to post accounts receivable in a sales journal, to handle incoming receivables, and to record daily receipts of moneys received in settlement of accounts receivable. Raichle, it was agreed, performed all these duties for Wooler. There was evidence that on the occasions when Touche Ross sent an accounting employee to examine Wooler's books, that person worked in close proximity to Raichle and observed her perform these several functions. Expert

witnesses uniformly expressed the opinion that an accountant possessing reasonable accounting skill would have been aware of the potential for theft inherent in Wooler's internal controls.

Moreover, there was evidence that Touche Ross had supplied to employees who examined Wooler's financial records checklists entitled "Scope of Inquiries." These checklists reminded the accountant's employees to inquire into Wooler's allocation of bookkeeping duties. As a matter of practice, Touche Ross employees were instructed to be "alert for possible improvements in the client's accounting policies and procedures, system of internal control and accounting personnel and the assignment of duties." [4]

■ From this evidence, the trial court found that Touche Ross' accounting personnel had "failed to use reasonable care in being alert" and had "failed to make the necessary inquiries in accordance with reasonable professional standards so as to discover what was readily discoverable to it in order to protect plaintiff." (Finding of Fact # 26). This finding was sustained by the court en banc and is supported by the evidence. We will not disturb it on appeal. See generally: *Bethlehem Steel Corp. v. Litton Industries, Inc.*, 321 Pa.Super. 357, 366–367, 468 A.2d 748, 752 (1983) (findings of trial judge, affirmed by the court en banc, have the effect of a jury verdict and will not be disturbed on appeal if supported by the record). Accord: *Bachman v. Artinger*, 285 Pa.Super. 57, 60–61, 426 A.2d 702, 704 (1981); *Yates v. Clifford Motors, Inc.*, 283 Pa.Super. 293, 299, 423 A.2d 1262, 1265 (1980).

■ Because Touche Ross breached its duty to exercise the care and skill customarily exercised by an accountant, it can be made to respond in damages if its negligence was a substantial factor in bringing about Wooler's loss by employee defalcations. The trial judge, believing that liability

4. This excerpt is from exhibit D–3, Touche Ross' "Program for Review of Unaudited Financial Statements," which was in effect from August, 1972 through 1974. A similar program had been in effect from 1968 to 1972.

could not be imposed upon Touche Ross because it had been improperly joined as an additional defendant, did not consider and made no findings regarding the issue of causation. He made no further findings after he had held that Touche Ross could not be held liable because it had been improperly joined as an additional defendant. This was error.

■ If Touche Ross violated a duty of care owed to Wooler and if its negligence was a substantial factor in causing Wooler's loss, the trial court could not refuse to impose liability on Touche Ross merely because its joinder as an additional defendant should not, in the trial judge's opinion, have been allowed previously by another judge.

■ In the first place, the joinder was proper. Wooler had sustained a loss because an unfaithful employee had wrongfully diverted checks intended for her employer. Wooler sought to recover the loss thereby sustained from the Bank in an action in which it contended that the Bank had been negligent in failing, contrary to commercially reasonable practices, to detect the forgeries on checks deposited by the faithless employee. It was the Bank's negligence, Wooler contended, which had made diversions of checks possible and had prevented immediate detection. The Bank joined Touche Ross on grounds that it was jointly and severally liable because its negligence had also made possible the diversions of Wooler's checks and had prevented detection of the employee's peculations. Such joinder was proper. Pa.R.C.P. 2252(a) has specifically authorized the joinder of any person who is alleged to be jointly and/or severally liable with the defendant on the cause of action alleged by the plaintiff.

■ Secondly and in any event, the trial judge could not properly overrule the earlier order of another judge which had specifically allowed the joinder of Touche Ross as an additional defendant. "Absent some new evidence, it is improper for a trial judge to overrule an interlocutory order by another judge of the same court in the same case."

*Bersani v. School District of Philadelphia,* 310 Pa.Super. 1, 4, 456 A.2d 151, 153 (1982). See: *Walker v. Pugliese,* 317 Pa.Super. 595, 598 n. 1, 464 A.2d 482, 483–484 n. 1 (1983); *Commonwealth v. Eck,* 272 Pa.Super. 406, 409, 416 A.2d 520, 522 (1979); *Marmara v. Rawle,* 264 Pa.Super. 229, 238, 399 A.2d 750, 755 (1979); *Vitale v. Zoning Hearing Board of Upper Darby Township,* 63 Pa.Cmwlth. 604, 607, 438 A.2d 1016, 1018 (1982); *Commonwealth v. Tyson,* 57 Pa. Cmwlth. 569, 575, 427 A.2d 283, 286 (1981). The propriety of Touche Ross' joinder had been raised pre-trial in preliminary objections. The preliminary objections had been overruled, and thereafter the case had proceeded with Touche Ross as an active participant. Trial was non-jury. Any danger of confusion that might possibly have been caused by joining issues of liability on the part of different parties was minimal, for the trial judge, being learned in the law, could readily discern the different issues and decide them separately. Therefore, even if the trial court did believe that the joinder of Touche Ross had been irregular, this was not an adequate basis on which to decide that the additional defendant was not substantively liable if found negligent.

After the trial court found from the evidence that Touche Ross had been negligent, it was then incumbent upon the court to determine whether such negligence had been a substantial factor in causing Wooler's loss. Upon remand, the trial court should make an appropriate finding relative to the existence or nonexistence of a causal connection between the negligence of Touche Ross and the loss sustained by Wooler.

 The Bank also argues that the trial court erred by adding pre-judgment interest of $77,228.00 to a compensatory damage award of $150,848.77. Wooler's cause of action against the Bank was in tort, not contract.[5] As a general

5. In contract cases, a successful plaintiff is entitled to pre-judgment interest at the statutory rate as a matter of right; it is calculated from the time the debt became due or payable. See: *Penneys v. Pennsylvania R.R. Co.,* 408 Pa. 276, 279–280 & n. *, 183 A.2d 544, 546 & n. 1 (1962); *Gold & Co. v. Northeast Theater Corp.,* 281 Pa.Super. 69, 76, 421 A.2d 1151, 1154 (1980); *Oxford Mfg. Co. v. Cliff House Building*

rule, interest as such is not recoverable in tort actions where the damages sought are unliquidated. *Marrazzo v. Scranton Nehi Bottling Co.*, 438 Pa. 72, 74, 263 A.2d 336, 337 (1970) (collecting cases). To the extent that prejudgment interest is recoverable in tort cases, it is more accurately identified as compensation for delay. See: *American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050, 1056 (3rd Cir.1982).

 Pursuant to Pa.R.C.P. 238, which became effective April 15, 1979, a plaintiff who recovers a verdict for personal injury, death or property damage is entitled under certain enumerated circumstances to receive an additional award of interest at the rate of ten percent from the date of the complaint.[6] See: *Laudenberger v. Port Authority of*

Corp., 224 Pa.Super. 387, 389, 307 A.2d 343, 345 (1973). See also: *American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050, 1056 (3rd Cir.1982); *Interlake, Inc. v. Erie Indus. Trucks, Inc.*, 427 F.Supp. 1012, 1013 (W.D.Pa.1977).

6. Pa.R.C.P. 238 provides:
Rule 238. Award of Damages for Delay in an Action for Bodily Injury, Death or Property Damage
(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court or the arbitrators appointed under the Arbitration Act of June 16, 1836, P.L. 715, as amended, 5 P.S. § 30 et seq., or the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, 40 P.S. § 1301.101 et seq., shall
 (1) add to the amount of compensatory damages in the award of the arbitrators, in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision;
 (2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision.
(b) In arbitration under the Act of 1836, the amount of damages for delay shall not be included in determining whether the amount in controversy is within the jurisdiction of the arbitrators.
(c) Except as provided in subdivision (e), damages for delay shall be added to the award, verdict or decision against all defendants found liable, no matter when joined in the action.
(d) The court may, and on request of a party shall, charge the jury that if it finds for the plaintiff, it shall not award the plaintiff any damages for delay because this is a matter for the court.

*Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed sub nom. Bucheit v. Laudenberger*, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982). Delay damages have also been recovered in tort actions when considerations of justice and fair dealing have required it. See generally: *Aviation Associates of Puerto Rico v. Dixon Co.*, 333 F.Supp. 982 (M.D.Pa.1971); *Conover v. Bloom*, 269 Pa. 548, 112 A. 752 (1921); *Richards v. Citizens Natural Gas Co.*, 130 Pa. 37, 18 A. 600 (1889). Double recovery, however, is not permitted. If there is a recovery of delay damages under Pa.R.C.P. 238, there can be no recovery under common law principles enumerated in *Marrazzo v. Scranton Nehi Bottling Co., supra*. See: *American Enka Co. v. Wicaco Machine Corp., supra* at 1057.

▆▆▆▆ In the instant case, Pa.R.C.P. 238 can have no application. The action was pending when the rule went into effect; and the rule specifically provides that it shall not be applicable to pending actions. Whether delay damages, measured according to the legal rate of interest, are due under common law principles is an issue of fact. Applicable principles have been stated repeatedly by the Supreme and Superior Courts. In *Marrazzo v. Scranton Nehi Bottling Co., supra* 438 Pa. at 74–75, 263 A.2d at 337, the Supreme Court said:

> (e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made.
>
> (f) If an action is pending on the effective date of this rule, or if an action is brought after the effective date on a cause of action which accrued prior to the effective date, damages for delay shall be computed from the date plaintiff files the initial complaint or from a date one year after the accrual of the cause of action, or from a date six (6) months after the effective date of this rule, whichever date is later.
>
> (g) This rule shall not apply to
>
> (1) eminent domain proceedings:
>
> (2) pending actions in which damages for delay are allowable in the absence of this rule.
>
> (notes omitted).

This Court . . . has developed the doctrine that: " . . . there are cases sounding in tort, and cases of unliquidated damages, where not only the principle on which the recovery is to be had is compensation, but where also the compensation can be measured by market value, or other definite standards. Such are cases of the unintentional conversion or destruction of property, etc. Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully compensated unless he receive, not only the value of his property, but receive it, as nearly as may be, as of the date of his loss. Hence it is that the jury may allow additional damages, in the nature of interest, for the lapse of time. It is never interest as such, nor as a matter of right, but compensation for the delay, of which the rate of interest affords the fair legal measure." *Richards v. Citizens Natural Gas Company*, 130 Pa. 37, 40, 18 A. 600 (1889). *Irvine v. Smith*, 204 Pa. 58, 53 A. 510 (1902); *Stevenson v. Ebervale Coal Company*, 203 Pa. 316, 52 A. 201 (1902); *Klages v. Philadelphia & Reading Terminal Co.*, [160 Pa. 386, 28 A. 862 (1894)]; *Campbell v. Baltimore & Ohio Railroad Company*, 58 Pa.Superior Ct. 241 (1914). *We have emphasized that compensation for delay in payment is not a matter of right but is an issue for the finder of fact, the resolution of which depends upon all the circumstances of the case.* (emphasis added).

The *Marrazzo* Court quoted further from *Pierce v. Lehigh Valley Coal Co. (No. 2)*, 232 Pa. 170, 172, 81 A. 142, 143 (1911) as follows:

*The right to compensation . . . is, therefore, usually a question for the [fact finder] under the evidence submitted.* If the fault in nonpayment of the claim rests with the defendant he cannot complain if he is required to compensate for the delay. If on the other hand the fault lies with the plaintiff by reason of an excessive and unconscionable demand, one which the defendant is required to protect himself against by litigation, he should not be penalized for the unwarranted conduct of the

plaintiff and required to pay damages for the delay in the settlement of the claim." *Conover v. Bloom,* 269 Pa. 548, 112 A. 752 (1921); *Stevenson v. Ebervale Coal Company,* supra; *Mead v. Central Pennsylvania Traction Company,* 54 Pa.Superior Ct. 400 (1913). The theory behind this element is the belief that the defendant would have been willing to settle the case at a much earlier stage if the plaintiff had made a reasonable demand and because the plaintiff made an unreasonable demand he cannot complain that he had not had the use of the money during the period of litigation. The burden of proving that the demand was unreasonable is upon the defendant. *Conover v. Bloom,* supra.

*Id.,* 438 Pa. at 75–76, 263 A.2d at 338. (emphasis added).

In *Murray Hill Estates, Inc. v. Bastin,* 442 Pa. 405, 276 A.2d 542 (1971), the Supreme Court quoted with approval from *McDermott v. McDermott,* 130 Pa.Super. 127, 130, 196 A. 889, 890 (1938) as follows:

An examination of the cases dealing with the charge and allowance of interest will disclose many difficulties, but the decided trend of courts of law and courts of equity has been 'to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case' ... Unless a case be found, which is a conclusive precedent, the safest and at the same time the fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing.

*Id.,* 442 Pa. at 410, 276 A.2d at 545.

In a case where the trial judge had made no findings and had stated no reasons for making an award of interest, this Court, per Cercone, P.J., said:

The trial judge in *Marrazzo,* as here, did not indicate his reason for awarding interest and the Supreme Court, therefore, vacated and remanded the record for the trial court to make findings of fact and conclusions of law as to the delay. Likewise, *we remand the record to the*

*trial court for an assessment of responsibility for the delay,* as well as the basis for imposing and computing the amount of "delay compensation." "All circumstances relevant to the delay must be developed and analyzed." *Marrazzo,* 438 Pa. at 77, 263 A.2d at 338. *The trial court should articulate what legal standard he is employing and "what circumstances he considered in arriving at his decision." Id.,* 438 Pa. at 76, 263 A.2d at 338.

*Wade v. S.J. Groves & Sons Co.,* 283 Pa.Super. 464, 477–478, 424 A.2d 902, 908–909 (1981) (emphasis added) (footnote omitted).

██ This case must be remanded. Upon remand, the trial court should make findings with respect to whether Touche Ross' negligence was a substantial factor in causing Wooler's loss. It should also make findings and determine whether Wooler is entitled to recover compensation for delay.

Judgment reversed, and case remanded to the trial court for proceedings consistent with this opinion. Jurisdiction is not retained.