**In re WHEELING–PITTSBURGH STEEL CORPORATION, et al., Debtor.**

**WHEELING–PITTSBURGH STEEL CORPORATION, et al., Plaintiff,**

**v.**

**WEST PENN POWER COMPANY, Defendant.**

**Bankruptcy No. 85–793 PGH. Adv. No. 87–0269.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 10, 1990.

Joseph S. Sisca, Pittsburgh, Pa., for plaintiff.

Andrew C. McGhee, Pittsburgh, Pa., for defendant.

Lori R. Beers, Pittsburgh, Pa., for Official Committee of Unsecured Creditors.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

Wheeling–Pittsburgh Steel Corporation, Et Al. ("Debtor"), filed its Petition under Chapter 11 of the Bankruptcy Code on April 16, 1985.

The Debtor's Allenport and Monessen facilities received electric utility service from West Penn Power Company ("West Penn") pursuant to a prepetition contract dated December 19, 1966 (the "Prepetition Contract") until April 22, 1987, at which time, the Debtor was granted summary judgment on its motion to reject the Prepetition Contract. *In re Wheeling–Pittsburgh Steel Corporation*, 72 B.R. 845 (Bankr.W. D.Pa.1987).

In this Adversary Proceeding, the Debtor seeks to recover a portion of the monies paid to West Penn between April 16, 1985 and April 22, 1987 (the "Postpetition Period") for utility service, asserting that payment made during the Postpetition Period exceeded the reasonable value of the electric utility service.

In its Counterclaim, West Penn seeks allowance of an administrative claim to the extent that the payments made by the Debtor during the Postpetition Period were

less than the reasonable value of the actual and necessary service provided.

After review of the parties' Pretrial Statements and after hearing arguments of counsel at two Pretrial Conferences, we find that there are no material issues of fact and that this matter is ripe for decision without further hearings.

We have jurisdiction over the parties and subject matter of the action under 28 U.S.C. § 157(b) and 28 U.S.C. § 1334 and the General Order of Reference of the United States District Court for the Western District of Pennsylvania dated October 16, 1984. This is a core proceeding under the meaning of 28 U.S.C. § 157(b).

*Issue*

What is the appropriate rate for calculating the reasonable value of the electric utility service West Penn provided to the estate during the Postpetition Period?

*Facts*

Allenport and Monessen received electric utility service from West Penn under the terms of the Prepetition Contract through April 22, 1987 and were billed in accordance with West Penn's rate schedule 46. On April 22, 1987, the court approved the Debtor's rejection of the Prepetition Contract.

West Penn's commercial customers have rate schedules 46, 44, 40, 30 and 20 available for their use.

Rate schedule 46 is available to West Penn's largest customers, if the customer enters into an electric service agreement of at least ten years with a two-year written cancellation notice.

Rate schedule 44 is also available to West Penn's largest customers, if the customer enters into an electric service agreement of at least five years with a one-year written cancellation notice and if they are able to interrupt and shut down all operations upon receiving notice from West Penn to do so. The nature of the Debtor's operations would not permit the Debtor to interrupt and shut down operations.

Rate schedules 46 and 44 carry the lowest per unit energy charge because of volume, but carry high demand charges, so that when a Rate 46 or 44 customer fails to reach adequate levels of demand, the customer is billed a minimum demand charge. Minimum demand charges reimburse West Penn for the cost of holding available sufficient capacity to serve its customers.

Rate schedules 40 and 30 are available to customers with lower demand, but they carry a higher charge per energy unit. The minimum demand charges for rate schedules 40 and 30 are lower than for rate schedules 46 and 44. Rate schedules 40 and 30 also require an electric service agreement between one and four years.

Rate schedule 20 is available to any customer and carries no minimum demand requirement, but the customer must take service for a minimum of one year unless the customer elects to take service under the monthly service provision of rate schedule 20, wherein all charges are increased by 10% and all minimum demand charges are waived.

Upon allowance of rejection of the Prepetition Contract as of April 22, 1987, the parties negotiated new agreements under which Allenport and Monessen received electric utility service pursuant to West Penn's rate schedules 40 and 30, respectively.

*Discussion*

Section 503(b) of the Bankruptcy Code allows the payment of administrative expense, including "the actual, necessary costs and expenses of preserving the estate ...". 11 U.S.C. § 503(b).

■ During the Postpetition Period, the electric utility service provided by West Penn to the Debtor was an actual and necessary cost of preserving the estate. *In re Cablehouse, Ltd.*, 63 B.R. 685 (Bankr. S.D.Ohio 1986). In determining the actual and necessary cost of utility service to the Debtor, the court must determine the reasonable value of the utility service provided. *In re Sharon Steel Corp.*, 79 B.R. 627 (Bankr.W.D.Pa.1987), *aff'd.* 872 F.2d 36 (3d Cir.1989).

West Penn asserts that the actual and necessary cost of preserving the estate is presumed to be the rate charged under the Prepetition Contract, rate schedule 46. In the alternative, West Penn asserts that rate schedule 20 is appropriate since that is the only rate schedule available without a written contract.

In opposition, the Debtor would have us create a hybrid rate, using different rate schedules resulting in the lowest payment by the Debtor depending on its consumption at various times.

■ Rejection of an executory contract is effective as of the date of bankruptcy. *Id.* The Debtor may not avoid the burdens of the rejected contract and at the same time extract its benefits. *Id.* Therefore, the value of the service provided by West Penn may not be measured by picking the lowest available rate from time to time under different rate schedules, depending on short term circumstances, while ignoring the requirements mandatory for the use of such rates.

■ If the Debtor rejects an executory contract, the continued provision of service may be on terms applicable to new customers similarly situated to the Debtor. *In re Monroe Well Service*, 83 B.R. 317 (Bankr. E.D.Pa.1988). The reasonable value of the electric utility service can best be determined by retrospectively recalculating value utilizing rate schedules commonly used by customers with demand levels similar to the Debtor.

■ The parties determined and agreed, after rejection of the Prepetition Contract, that rate schedules 40 and 30 were appropriate for the Debtor based on its consumption levels. Such agreement is persuasive evidence that rate schedules 40 and 30 are therefore the appropriate measure of the reasonable value of the electric utility service provided to the Debtor during the Postpetition Period.

Also, the other alternative rate schedules may be eliminated by analysis. The Debtor may not utilize rate schedule 44 in retrospective calculation of the fair value of the services provided, because rate schedule 44 requires the user to submit to arbitrary power shutoff, and the Debtor would not have been able to agree to such a service limitation without risking inordinate loss to the Debtor's physical plant. Further, it would be unreasonable to measure the fair value of the power supplied to a large industrial user by the same standard used for small retail outlets, as would be the case if rate schedule 20 were used as the applicable rate.

We find that the reasonable value of the services may only be calculated by retrospective application of rate schedules 40 and 30. The parties have stipulated as a factual matter that calculations under rate schedules 40 and 30 for the Postpetition period would show excess payments to West Penn of $549,515.91. We therefore conclude that the Debtor has made excess payments to West Penn in the amount of $549,515.91.

■ The Debtor asserts an entitlement to interest on any overpayment. In claims that arise out of a contractual right, interest is allowed at the legal rate from the date payment is wrongfully withheld, where the damages are liquidated and certain, and the interest is readily ascertainable through computation. *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa. Super. 14, 473 A.2d 584 (1984). The court is obligated to award interest at the legal rate in those circumstances in which the defendant breached a "promise to pay 'a definite sum of money' or render a performance the value of which is ascertainable with exactitude." *Peterson v. Crown Financial Corp.*, 661 F.2d 287 (3d Cir. 1981).

West Penn billed the Debtor in accordance with the service agreement in effect at the time of billing. There was no other rate under which West Penn could have billed the Debtor. However, even though the overpayment was unliquidated and undetermined at the time of the rendition of the service, the amount was ultimately precisely determinable once the facts were known and the applicable law determined. Had the parties known on April 22, 1987 the facts as to power usage during the

Postpetition period, and had they known the applicable rule of law, the precise amount of the overpayment as of April 22, 1987 could have been calculated. Hence, Debtor is entitled to interest at the legal rate from April 22, 1987 to the date of payment. The legal rate of interest in Pennsylvania is 6% per annum. 41 Pa.S.A. § 202 (Purdon Supp.Pamph.1990). *Frank B. Bozzo, Inc. v. Electric Weld Division,* 345 Pa.Super. 423, 498 A.2d 895 (1985); *Robert Wooler Co. v. Fidelity Bank,* 330 Pa.Super. 523, 479 A.2d 1027 (1984).

The Official Committee of Unsecured Creditors ("Creditors' Committee") has entered an appearance to object to a stipulated settlement on a matter related to this action. Following rejection of the Prepetition Contract, West Penn filed a proof of claim in the amount of $4,200,000 for damages it claimed were suffered as a result of the rejection of the Prepetition Contract. The Debtor objected to West Penn's proof of claim. In the Stipulated Settlement between West Penn and the Debtor, West Penn's proof of claim is withdrawn and the Stipulation further provides that West Penn is entitled to an unsecured claim in the amount of any recovery the Debtor obtains in this Adversary Proceeding. The Creditors' Committee believes that any recovery by the Debtor from its administrative expense overpayment should be netted against West Penn's unsecured claim for rejection damages.

The rejection of the Prepetition Contract gives rise to a prepetition claim. *In re Monroe Well Service,* 83 B.R. 317 (E.D.Pa. 1988). We agree with the Debtor that two separate entities are involved—the prepetition entity which breached its contract giving rise to West Penn's proof of claim, and a postpetition entity which overpaid the administrative expense and is entitled to recover the overpaid administrative expense. We will therefore approve the Stipulation of Settlement.

West Penn shall repay the Debtor $549,-515.91, plus interest, and West Penn shall have a general unsecured non-priority claim against the Debtor's estate in the same amount (including interest paid) for rejection damages.

An appropriate order will be entered.