741 A.2d 176

FIRST INDEMNITY OF AMERICA INSURANCE COMPANY, PLAINTIFF v. LETTERS, MEYLER & CO, P.C., WILLIAM A. MEYLER, P.C., WILLIAM A. MEYLER, INDIVIDUALLY AND JOSEPH LETTERS, INDIVIDUALLY, DEFENDANTS.

Superior Court of New Jersey
Law Division
Morris County

Decided June 12, 1998.

*Wolff & Samson, P.C. (Harlen L. Cohen,* appearing), attorneys for plaintiff First Indemnity of America Insurance Company, a New Jersey Corporation.

*Mendes & Mount, LLP (William S. Wachenfeld,* appearing), attorneys for defendants Letters, Meyler & Co., a professional corporation, William A. Meyler, P.C., a Professional Corporation, William A. Meyler, individually, and Joseph Letters, individually.

KAREN D. RUSSELL, P.J.S.C.

Defendant Letters, Meyler & Co., P.C. (hereinafter, "Letters, Meyler") performed certain accounting services for Soldo Construction, a general contractor involved in various projects in the late 1980's and early 1990's. In 1988, Soldo requested that plaintiff, First Indemnity of America Insurance Company (hereinafter, "FIA") issue surety bonds to secure Soldo's performance on certain projects. Plaintiff FIA maintains that defendant Letters, Meyler negligently prepared, reviewed and disseminated financial statements to FIA and negligently misrepresented Soldo's financial condition to FIA. Plaintiff's liability expert Leonard Schneider concluded that the financial statement for the period ending October 31, 1990 deviated from accepted accounting standards. Soldo's agent Robert Haarsgaard & Company transmitted copies of that financial statement to FIA on February 14, 1991. In December of 1992, Soldo filed for bankruptcy under Chapter 11, resulting in losses by FIA.

Defendant maintains that neither generally accepted accounting principles nor existent New Jersey caselaw recognizes accountant liability to a third party for the performance of a review engagement. Defendant notes that the predecessor bonding company CIGNA terminated its bonding line to Soldo in 1988 for lack of an audited financial statement, and argues that FIA's alleged reliance on the review engagement was at "its own peril."

Plaintiff maintains that a "plethora" of cases throughout the United States have held accountants liable for negligence in

preparing unaudited as opposed to audited financial statements. Plaintiff urges that although FIA made its underwriting decision before the October 31, 1990 financial statements and reports were issued, "FIA was earlier informed of the information" in the Soldo financials, further the financials were received four months before actual issuance of the performance bonds. Conceding that there are no reported New Jersey cases on point, plaintiff relies on *Robert Wooler Company v. Fidelity Bank*, 330 *Pa.Super.* 523, 479 *A.2d* 1027 (1984). *Wooler* held that an "agreement to perform unaudited services was not a shield from liability, . . . for ignoring suspicious circumstances which would have raised a 'red flag' " *Id.* at 1032 (citing, *1136 Tenants' Corp. v. Max Rothenberg & Co.*, 36 *A.D.2d* 804, 319 *N.Y.S.2d* 1007 (1972); *United States v. Natelli*, 527 *F.2d* 311 (2nd Cir.1975), *certif. denied*, 425 *U.S.* 934, 96 *S.Ct.* 1663, 48 *L.Ed.2d* 175 (1976); *Blakely v. Lisac*, 357 *F.Supp.* 255 (D.Or.1972); *Ryan v. Kanne*, 170 *N.W.2d* 395 (Iowa 1969); *Bonhiver v. Graff*, 311 *Minn.* 111, 248 *N.W.2d* 291 (1976)).

Defendant argues that *Wooler* is distinguishable in that in *Wooler* the accounting firm was retained by the plaintiff, whereas here the defendant accounting firm was retained by Soldo and the financial statements were provided to FIA by the contractor's bonding agency Robert E. Haargaard & Company. Further, New Jersey has codified the liability of an accountant to a third party in the enactment of *N.J.S.A.* 2A:53A–25 (West 1995),[1] effective March 17, 1995, to preclude liability in the present fact pattern.

---

[1] *N.J.S.A.* 2A:53A–25 provides in pertinent part:

b. Notwithstanding the provisions of any other law, no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless:
(1) The claimant against the accountant was the accountant's client; or
(2) The accountant:
(a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;

The limited legal issue presented is whether 1990 and 1991 New Jersey law recognized a claim by a third party for an accountant's negligence in a review engagement.

In 1991 the legal standards as to accountant liability varied throughout the United States as noted in Brian K. Kirby & Thomas L. Davies, *Accountant Liability, New Exposure for an Old Profession,* 36 *S.D.L.Rev.* 574, 599 (1991):

> The following lists the major legal liability theories and the states that subscribe to them. Jurisdictions following the privity doctrine include Colorado, Florida, Indiana, New York, Pennsylvania, Arkansas, Illinois and Kansas ... Jurisdictions that impose a duty on all accountants include California, Minnesota, Mississippi, New Jersey, Ohio, Wisconsin and part of Texas. Jurisdictions that follow the Restatement include Canada, Georgia, Iowa, Kentucky, Missouri, Nebraska, New Hampshire, North Carolina, Rhode Island, part of Texas, Utah and Washington. The rest of the jurisdictions (including South Dakota), appear to be either involved in a less known or adhered-to standard, have a mix of standards or have no clear cut opinion at all ... The point of emphasis here is that no absolute primary standard for determining the nation-wide situation of accountant liability exists. *Id.,* at 599 n. 48 (citations omitted).

The leading New Jersey case on accountant liability at the time of the events in the present case was *H. Rosenblum, Inc. v. Adler,* 93 *N.J.* 324, 461 *A.*2d 138 (1983) which held:

> When the independent auditor furnishes an opinion with no limitation in the certificate as to whom the company may disseminate the financial statements, he has a duty to all those whom the auditor should reasonably foresee as recipients from the company of the statements for its proper business purposes, provided that the recipients rely on the statements pursuant to those business purposes. The principle that we have adopted applies by its terms only to those foreseeable users who receive the audited statements from the business entity for a proper business purpose to influence a business decision of the user, the audit having been made for that business entity. *Id.,* at 352, 461 *A.*2d 138.

While *H. Rosenblum, Inc.* rejected the requirement of privity and extended liability of an accountant for malpractice in the preparation of certified financial statements issued without limita-

---

(b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and

(c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service.

tion to reasonably foreseeable users who receive the audited statements, the opinion does not reach unaudited financial statements, nor does the reasoning therein suggest that it should be so extended. Part of the *H. Rosenblum, Inc.* analysis rested upon the important role of the unqualified audit opinion in the modern business world:

> Certified financial statements have become the benchmark for various reasonably foreseeable business purposes and accountants have been engaged to satisfy those ends. In those circumstances accounting firms should no longer be permitted to hide within the citadel of privity and avoid liability for their malpractice. The public interest will be served by the rule we promulgate this day. *Id.*, at 353, 461 A.2d 138.

The first page of the October 31, 1990 report of "Unaudited Financial Statements of Soldo Construction Co., Inc." states:

> To the Stockholders and Directors
>
> Soldo Construction Co., Inc.
>
> Leonardo, New Jersey 07737
>
> We have reviewed the accompanying balance sheet of Soldo Construction Co., Inc., as of October 31, 1990, and the related statements of income and retained earnings and changes in cash flows for the year then ended, in accordance with standards established by the American Institute of Certified Public Accountants. All information included in these financial statements is the representation of the management of Soldo Construction Co., Inc.
>
> A review consists principally of inquiries of company personnel and analytical procedures applied to financial data. It is substantially less in scope than an examination in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements as a whole. Accordingly, We do not express such an opinion.
>
> Based on our review, we are not aware of any material, modifications that should be made to the accompanying financial statements in order for them to be in conformity with generally accepted accounting principles.
>
> LETTER, MEYLER & CO.
>
> December 29, 1990
>
> Linden, New Jersey

This disclaimer clearly explains that no audit opinion regarding the financial statements as a whole is expressed, rather only that the balance sheet has been reviewed, the review consisting "principally of inquiries of company personnel and analytical procedures applied to financial data." Clearly this report is distinguishable

from the unqualified audit opinion discussed in *H. Rosenblum, Inc.*

The *H. Rosenblum, Inc.* decision set forth several criteria to impose liability, including a requirement that the uses of the statements by the third party be reasonably foreseeable uses at the time of preparation of the statements. In view of *H. Rosenblum, Inc.'s* acknowledgment that an auditor can expressly limit the persons or class of persons who would be entitled to rely upon an audit, it logically follows that an auditor may also expressly limit the intended uses of an unaudited statement. Given the express language on page one of the unaudited report describing how it was prepared and its limitations, it was not reasonably foreseeable at the time it was produced that a third party would give it the unwarranted status and use of an audited financial statement.

The Court concludes that New Jersey law in 1990 and/or 1991, prior to the legislative repudiation of *H. Rosenblum, Inc.* in 1995, would not recognize the claim by third party FIA for the negligent preparation by Letters, Meyler of the unaudited financial statement prepared in a review engagement. The court finds that the *Wooler* decision relied upon by plaintiff, representing the view of a minority of states as expressed in reported cases predating *H. Rosenblum, Inc.*, to have no import on the present case.