NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2804
_____

ILHAMI TEKMAN; MEHTAP TEKMAN,
                                        Appellants
v.

HERB BERKOWITZ a/k/a Herbert Berkowitz; WILLIAM E. HOWE & CO
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-12-cv-02932)
District Judge: Honorable J. William Ditter Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 8, 2015

Before: VANASKIE, NYGAARD, and RENDELL, *Circuit Judges*

(Filed: January 15, 2016)
_____

OPINION*
_____

VANASKIE, *Circuit Judge*.

Appellants Ilhami and Mehtap Tekman, a married couple, allege that Appellee

Herb Berkowitz, a tax accountant, violated contractual and professional obligations by

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

failing to disclose evidence of financial misconduct by the Tekmans' relatives and business associates. The Tekmans sued Berkowitz and his employer, Appellee William E. Howe & Co, for professional negligence, breach of contract, breach of fiduciary duty, and loss of consortium. The District Court granted Appellees' motion to dismiss with prejudice. We will affirm.

I.

Throughout the 1990s, Ilhami "John" Tekman participated with his brother, Nick, and father, Ali, in several real-estate investments involving the development and operation of motels and hotels in Delaware.[1] In 1999, John took a 25% share in one such enterprise, Tekman & Company, LLC (T&C), which was co-owned by Nick, Ali, and Ali's wife, Nuriye. John and Nick initially served as managers of the subject property, a "Quality Inn" franchise, but in 2002, they ceded day-to-day operation of the property to their brother Nuh, who had received a 25% interest in T&C from his parents.

The Amended Complaint alleges that thereafter, at various times between 2002 and 2010, John's relatives and business partners diverted T&C's profits to themselves and used T&C's assets as collateral for other commercial endeavors to which John was not a party. Foremost is the allegation that in September 2008, without John's knowledge, his parents and siblings authorized the use of T&C's assets as a guarantee for

---

[1] Our recitation of the factual background of this appeal is derived from the Tekmans' Amended Complaint. We accept as true all facts set forth in the Amended Complaint, and draw all reasonable inferences from such allegations in favor of the complainants. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Because Ilhami Tekman refers to himself as "John" in the Amended Complaint, we will likewise adopt that stylistic practice for ease of reference.

an $11 million loan for the construction of a separate hotel project. John's signature was forged on the relevant documentation, and he received no financial interest in the new enterprise.

The gravamen of the Amended Complaint is that this wrongdoing should have been detected and conveyed to John by Berkowitz, who "at all times material" provided a variety of accounting services both to T&C and to John and Mehtap personally. The services "includ[ed], but [were] not limited to preparing tax returns, providing tax advice/opinions and preparing financial statements for third-parties (such as lenders) . . . ." App. 19. John alleges that these relationships were governed by contracts that are "believed oral or otherwise in the possession of" Berkowitz and his employer. App. 25.

In "late 2010," John learned from his former sister-in-law about the aforementioned forgery. App. 21. John promptly sued his parents and brothers in Delaware Chancery Court for fraud and breach of fiduciary duty. The case went to trial, at which Berkowitz testified that he had learned about the forgery of John's signature in June 2010, but did not tell John about it. Berkowitz also testified that "he was aware as early as 2005 that [T&C] was not operating in accordance with standard accounting practices." App. 22. The case resulted in a settlement in which John sold his share of the business.

In December 2011, John and Mehtap filed this lawsuit against Berkowitz and his employer, William E. Howe & Co, a Pennsylvania limited partnership, in the Pennsylvania Court of Common Pleas in Philadelphia. Appellees removed the suit to federal district court and moved to dismiss the Complaint under Federal Rule of Civil

3

Procedure 12(b)(6). In response, the Tekmans filed an Amended Complaint asserting that Berkowitz's failure to detect and disclose the aforementioned misconduct constituted professional negligence, breach of contract, and breach of fiduciary duty.[2] Appellees again moved to dismiss. In April 2014, the District Court granted the motion to dismiss with prejudice. The Tekmans timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have appellate jurisdiction under 28 U.S.C. § 1291.

Our review of a district court's dismissal under Rule 12(b)(6) is *de novo*. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009). Federal Rule of Civil Procedure 8 requires that a plaintiff come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." The claim must have "facial plausibility," which exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations of liability are insufficient. *See id.* at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

---

[2] The Amended Complaint also included a separate claim on behalf of Mehtap for loss of consortium, which the Tekmans do not address on appeal.

4

III.

The Tekmans challenge the District Court's dismissal of their claims on substantive grounds, as well as the Court's denial of leave to file a second amended complaint. We will address the claims sequentially.

A.   Negligence

Under Pennsylvania law, an accountant's breach of a professional duty (i.e., malpractice) sounds in tort as an action for negligence. *Robert Wooler Co. v. Fidelity Bank*, 479 A.2d 1027, 1031 (Pa. Super. Ct. 1984). The elements of a negligence claim include the existence of a duty, breach, causation, and injury. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

When the accountant has an express service contract, the scope of the duty is defined primarily by the terms of contract. *See Robert Wooler Co.*, 479 A.2d at 1031 (citing *O'Neill v. Atlas Auto. Fin. Corp.*, 11 A.2d 782, 785 (Pa. Super. Ct. 1940)); Restatement (Second) of Torts § 299A cmt. c.[3]  An accountant must then provide the contracted-for services with the "skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement (Second) of Torts § 299A. And aside from establishing the substantive content of the duty at issue,

---

[3] A breach of contract claim, too, may exist based on a professional's "failure to fulfill his or her contractual duty to provide the agreed upon [professional] services in a manner consistent with the profession at large." *Gorski v. Smith*, 812 A.2d 683, 694 (Pa. Super. Ct. 2002). *See also Koken v. Steinberg*, 825 A.2d 723, 729–30 (Pa. Commw. Ct. 2003) ("Nothing in our law insulates accountants or other professionals from being sued in contract for a failure to properly perform professional services."). The Tekmans bring a claim for breach of contract, which we address below.

5

a plaintiff must also allege that he or she was owed that duty as a matter of privity of contract with the professional defendant. *See Tredennick v. Bone*, 647 F. Supp. 2d 495, 500 (W.D. Pa. 2007).

The Tekmans do not claim that Berkowitz failed to perform any specific contracted-for service here—nor could they, given the Amended Complaint's failure to cite any particular contractual language. Instead they note that when an accountant, in the course of his or her duties, discovers "suspicious circumstances" such as glaring bookkeeping irregularities, he or she is obligated to investigate further and then bring the matter to the attention of the client. *Robert Wooler Co.*, 479 A.2d at 1032. The Tekmans contend that Berkowitz "knew or should have known" that, among other things, T&C's books contained evidence of backdated entries, erroneously reported transactions, improper distributions, and misused assets—and that Berkowitz in turn should have disclosed this information to John. App. 22. Supporting this claim is Berkowitz's admission that "he was aware as early as 2005 that [T&C] was not operating in accordance with standard accounting practices." *Id.*

Like the District Court, we conclude the Amended Complaint fails to state a viable negligence claim. As portrayed in the Amended Complaint, the scope of Berkowitz's contractual duties—whether to T&C as a business entity or to John personally—is largely a matter of guesswork. The Amended Complaint does not specify whether Berkowitz

provided auditing or other attestation services,[4] or had first-hand exposure to any of the internal corporate documents from which wrongdoing may have been apparent. The mere fact that Berkowitz prepared tax returns and other financial statements for T&C, without more, is not enough to permit the inference that he knew (or should have known) of the various acts of corporate malfeasance allegedly perpetrated by John's business partners. And to the extent that Berkowitz was obligated to disclose that T&C was not following standard accounting practices, that duty was owed not to John, but to T&C as a corporate entity. The Tekmans provide no authority to suggest that John, as a minority stakeholder in T&C, is himself able to sue for breach of a duty owed to T&C by its own accountant. *See In re Phar-Mor, Inc. v. Secs. Litig.*, 892 F. Supp. 676, 694 (W.D. Pa. 1995) (finding that stockholders and directors of a corporation were not in privity with corporation's accountant for purposes of negligence claims).

The Tekmans also claim that Berkowitz was negligent in failing to disclose the forgery of John's signature immediately after he learned of it in June 2010. We assume "arguendo" that Berkowitz, as John's tax accountant, did have a professional duty to tell John about the forgery. Even so, it does not follow that Berkowitz's breach of that duty caused any non-speculative harm. *See Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998) (requiring "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm"). As of August

---

[4] We have in other cases described the various auditing services that accountants may be hired to provide. *See, e.g., Otto v. Pa. State Educ. Assoc.-NEA*, 330 F.3d 125, 133–34 (3d Cir. 2003).

2010, less than two months after Berkowitz learned of the forgery, John himself discovered the deed through other channels and sued the parties responsible. The Tekmans have not alleged, nor can we infer, that Berkowitz's failure to disclose the forgery to them during this time caused them any actual harm.

Accordingly, we will affirm the District Court's dismissal of Count One of the Amended Complaint.

## B. Breach of Contract

Count Two alleges that Berkowitz breached an "agreement to provide competent, honest, undivided, loyal and effective accounting services . . . ." App. 25. "A claim for breach of contract exists where it can be shown that there was a contract, a breach of a duty imposed by that contract and damages that resulted from the breach." *Koken*, 825 A.2d at 729 (citing *Gen. State Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Commw. Ct. 1976)). The plaintiff must allege "basic elements" of a contract, including "an offer, acceptance and consideration." *Id.* (quoting *Hatbob v. Brown*, 575 A.2d 607, 613 (Pa. Super. Ct. 1990)).

As described above, the most that the Tekmans allege about the parties' contractual relationship here is that "the agreement between the parties is believed oral or otherwise in the possession of" Berkowitz and his employer. App. 25. The Amended Complaint does not allege which accounting services Berkowitz performed for any particular client, when he performed them, or what the oral or written contract might have provided. Instead, we are left only with the claim that Berkowitz performed a vague assortment of accounting duties for T&C and the Tekmans over an indeterminate span of

8

nearly ten years. These amorphous allegations do not permit a reasonable inference that Berkowitz breached a duty imposed by contract.

For these reasons, we will affirm the District Court's dismissal of Count Two of the Amended Complaint.[5]

### C. Breach of Fiduciary Duty

Under Pennsylvania law, a professional bears a fiduciary duty to his client only where the relationship is "confidential" as a matter of fact or law. *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 21-23 (Pa. Super. Ct. 2002). A confidential relationship "is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power." *Id.* at 23. "[A]ccountant-client relationships have not been deemed to be *per se* confidential in the sense of generating attendant fiduciary duties." *Basile v. H & R Block, Inc.*, 52 A.3d 1202, 1210 n.7 (Pa. 2012). The fiduciary status of a tax accountant in particular is a fact-intensive question. *Id.* at 1210. "There is a crucial distinction between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering into an arms length commercial agreement, however important its performance may be to the success of one's business." *eToll*, 811 A.2d at 23.

---

[5] The Tekmans also allege a breach of the covenant of good faith and fair dealing. A claim for breach of the covenant of good faith and fair dealing, however, cannot stand as a cause of action independent from a breach of contract claim. As noted in *JHE, Inc. v. Se. Pa. Transp. Auth.*, 2002 WL 1018941, at *7 (Pa. Com. Pl. May 17, 2002), "a breach of the covenant of good faith is nothing more than a breach of contract claim and . . . separate causes of action cannot be maintained for each, even in the alternative."

9

As explained by the District Court, the Amended Complaint alleges no facts from which one could reasonably infer that the Tekmans employed Berkowitz in a confidential capacity, rather than as part of an arm's-length commercial relationship. The Tekmans do not allege that they relied on Berkowitz to any unusual extent in their personal dealings, or that they surrendered any degree of control over T&C to Berkowitz. Accordingly, we will affirm the District Court's dismissal of Count Three of the Amended Complaint.

## D. Leave to Amend

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). We review denial of leave to amend for abuse of discretion. *Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 367 (3d Cir. 2013). A district court may deny leave to amend on the basis of "undue delay, bad faith, prejudice, or futility," *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230–31 (3d Cir. 2011) (quotation marks and citations omitted).

Here, the District Court concluded that "[t]he pleading defects were pointed out to [the Tekmans] by [Appellees'] motion to dismiss, yet neither their amended complaint nor their memorandum of law filed in response to [Appellees'] motion to dismiss included any additional facts that would support their claims." App. 16. The record supports the District Court's implicit conclusion that granting leave to amend would be futile. Accordingly, we conclude that the District Court did not abuse its discretion in dismissing the case with prejudice.

10

IV.

For the foregoing reasons, we will affirm the District Court's judgment entered on April 29, 2014.